[PHILADELPHIA, FEBRUARY 15, 1833.]

## ! SYLVESTER *against* GIRARD.

### IN ERROR.

By the act of *March* 22nd, 1817, entitled " an act to prevent the making, issuing, receiving and circulating certain descriptions of notes and tickets in the nature of bank notes, and for other purposes," a note in the nature of a bank note issued by an individual, is valid so far as to compel the drawer to discharge it, and is consequently the subject of property in the holder, and if stolen from him, it is the subject of larceny.

In an action of trover by the holder of such a note against the drawer, who had got possession of it and refused to return it on the ground that it did not belong to the holder, it is not necessary for the defendant to give notice to the plaintiff, before the trial, that he must prove his property in the note. The plea of not guilty in trover, requires the plaintiff fully to make out his case.

If such a note has been delivered to the plaintiff for the mere purpose of getting it exchanged, no property passes to him, and the circumstance of his being a creditor of the person delivering it, if no receipt or other acknowledgment of credit on the old debt be given at the time, does not alter the case.

*Quere,* whether a promissory note given for a consideration partly legal and partly illegal, is valid for so much as is legal?

WRIT of error to the District Court for the City and County of *Philadelphia,* in an action of trover brought by *Nathaniel Sylves-*

*ter* against *Stephen Girard* for a promissory note in the following form,

C.

" 1009. *C*. No. 353.　　　　　　No. 353.　　1000.

I promise to pay to *M. Gebler*, or bearer, One Thousand Dollars, on demand, at my Banking-house in South Third Street. *Philadelphia, May* 3, 1827.

*Steph^n· Girard.*"

" *J. Roberts*, Cashier."

[Indorsed] " *M. Gebler.*"

The defendant pleaded not guilty.

On the trial of the cause in the District Court, it appeared, that one *William Clew*, a porter in the service of the Bank of the United States had stolen the note in question from that institution. Being at the time indebted to the plaintiff, who kept a lottery office, in the sum of nine hundred and twenty-eight dollars and sixty-four cents, on account of the purchase from time to time, of various lottery tickets, of some of which, the sale in this state was prohibited by law, and for the whole of which the plaintiff then held his note payable on demand, he offered to him the above mentioned note of *Stephen Girard* in satisfaction of the debt, and requested his check for the balance. The plaintiff took *Girard's* note, but alleging that it would disorder his bank account to comply with *Clew's* request, declined giving his own check for the balance, saying, he would get *Girard's* note changed and then pay him the balance. *Clew* left the note with the plaintiff and did not take up his own note nor did he receive any credit on it.

In the meantime, the Bank of the United States, having discovered the loss of the note, sent notices to the different city banks, and requested them to stop it, if it should be presented.

*Sylvester* called at the Mechanic's Bank, which was the nearest to his own office, for the purpose of getting *Girard's* note changed. He was there informed of the notice received from the Bank of the United States and that the Mechanic's Bank could not receive the note. On being asked from whom he had received it, he declined disclosing the name of the person, but said he was a responsible man.

On his return to his office, *Clew*, who had remained there, told him he had found this note, and another of *Girard's* notes of like amount.

*Sylvester* then called at the Bank of the United States, and afterwards on *Girard*, without obtaining payment of the note. On the next day he put it into the hands of a Notary Public, who presented it to *Girard*, and demanded payment. This was refused, and the note itself, which had been delivered to him by the notary, for examination, was detained, whereupon the notary made a protest, that at the request of *N. Sylvester*, he had presented the original promissory note " at the banking-house of *Stephen Girard*, esq.

(Sylvester *v.* Girard.)

in South Third street, unto Mr. *Girard* the drawer, and Mr. *Roberts,* his cashier, they both being together, and demanding payment of the same, I received for answer, that he refuses to pay, and retains the said note, at the request of the Bank of the United States: wherefore, I, the said notary, was unable to obtain payment or a return of the said note." The notary, therefore protests, in the usual form, against the drawer, and all others concerned, for all damages, &c. for want of payment thereof, as well as for the detention of the same.

On the trial, an objection was made by the plaintiff's counsel to the admission of evidence tending to impeach the title of the plaintiff to the note. The judge admitted the evidence, and an exception was taken to his opinion. Exception was also taken to the whole of his charge to the jury, which the opinion given by this court, renders it unnecessary here to insert.

A verdict and judgment having been given for the defendant, the present writ of error was taken out, and the following specification of errors filed in this court:

1. The court erred in admitting evidence to shew that the Bank of the United States had lost the note in question, the said note having been issued and received, in violation of an act of assembly, and for receiving which, the Bank of the United States was subject to a penalty.

2. The Court erred in the admission of evidence to shew that the consideration given by the plaintiff to *Clew* for the note for which the action was brought, consisted, as the defendant alleged, of a debt due for lottery tickets; no notice having been given to the plaintiff to prove the consideration.

3. The charge of the court was erroneous in this particular, that the judge charged the jury, that it was competent to the defendant to shew, for what consideration, a certain promissory note, drawn by *Clew,* and held by the plaintiff, had been given; and that if illegal lottery tickets, that is, such as could not by law be vended in *Pennslyvania,* formed any part of the consideration of that note, the whole was void.

In support of the first specification of error, *Randall* and *Scott* contended, that by the act of the 22nd of *March,* 1817, entitled, "an act to prevent the making, issuing, receiving and circulating, certain descriptions of notes and tickets, in the nature of bank notes, and for other purposes," *Purd. Dig.* 96-97, the Bank of the United States could not be the lawful proprietors of the note in question, it having been issued by *Girard,* in violation of the provisions of that act.

As to the second specification of error, they alleged that the plaintiff had a right to notice from the defendant, that he would be required to prove the consideration given for the note. Property in mercantile paper of this description, passes by delivery. A note payable to bearer, is payable to him in the quality of bearer; he is not

required, *prima facie*, to go further than to shew his possession.    If
the defendant be entitled to enter into an inquiry as to the plaintiff's
right of possession, it can only be done on reasonable notice to him.
If the rule were otherwise, he would be taken by surprise.    *Chitty
on Bills*, 148. 400. 411.    4 *Taunt*, 114. *Latimer* v. *Hodgdon*, 5 *Serg.
& Rawle*, 514. *Grant* v. *Vaughan*, 3 *Burr.* 1516.    2 *Camp.* 5.    *Lown-
des et al. assignees of Lees* v. *Anderson et al.* 13 *East*, 134.

In arguing the third specification of error, they contended, that if the
consideration of the note given by *Clew* to the plaintiff was good in
any part, the note was not avoided by reason of its embracing a de-
fective consideration also.    The plaintiff's property in *Girard's* note
was in no degree affected by the soundness or unsoundness of *Clew's*
note to him.    The plaintiff was entitled to the possession of *Girard's*
note, stopped and detained from him against his consent by the defen-
dant, which in law amounted to a conversion, or to damages for the
detention.    *Miller* v. *Race*, 1 *Burr.* 452.    *Faikney* v. *Reynous and
another*, 4 *Burr.* 2069.    *Petrie et. al. exs. of Keeble* v. *Hannay*, 3 *D.
& E.* 418.    *Touteng and another* v. *Hubbard*, 3 *Bos. & Pull.* 295.
*Barjeau* v, *Walmsley*, 2 *Str.* 1249.

*Binney* and *Chauncey* for the Bank of the United States (the real
defendants, *Girard* being ready to pay the amount of his note to any
person entitled to receive it) argued that the case did not come within
the act of *March* 22nd, 1817, the second section of which recognizes
the right of individuals established for the purpose of banking, to issue
such notes as that in question.    This section embraces the case of
Mr *Girard*, who, when the act was passed had been for some time an
established banker; and the seventh section of the same act gave to
the Bank of the United States which was the legal proprietor of
the note, the exclusive right to recover from the drawer.    *Hess* v.
*Werts*, 4 *Serg. & Rawle*, 356.

In answer to the second specification of error, they contended,
that the plea of not guilty, the general issue in trover, puts the plain-
tiff to the proof of every thing necessary to make out his title to the
chattel which is the subject of the suit; no notice therefore is neces-
sary.    *Tid. Pr.* 702.    *Chitty Pl.* 89. 511.    2 *Taunt.* 2.    2 *Esp. Ca.*
611.    3 *Stark.* 1504.    11 *Johns. R.* 529.    13 *Johns. R.* 92.    14
*Johns. R.* 128.

With respect to the third error assigned, they said, they considered
the charge of the court as misunderstood.    It amounted in substance
to this, that if unlawful lottery tickets were to any extent the consi-
deration of *Clew's* note to *Sylvester*, the latter must shew from other
sources than the note itself, that a part of the consideration was law-
ful, although it was admitted that the judge had expressed an opin-
ion that the illegality of part of the consideration contaminated the
whole instrument.    They referred to *Yundt* v. *Roberts*, 5 *Serg. &
Rawle*, 139.    *Wheeler* v. *Russell*, 17 *Mass: R.* 258.    3 *Taunt.* 226.
3 *Bar. & Ald.* 181.    They also contended, that *Girard's* note was

(Sylvester *v.* Girard.)

only delivered by *Clew* to the plaintiff for the purpose of getting it changed; that no property in it passed to him, and that therefore he could not maintain an action for it in his own name.

The opinion of the court was delivered by

Huston, J.—By the second section of the act of 1817, this note of *Stephen Girard*, admitting him to be within the prohibitory clause, which I do not admit, would have been illegal, and no suit for the recovery on it could have been supported; and if so, this suit would be a useless contest about the right to that which was worthless.

Admit, however, that generally no suit can be supported on a note or writing, which the law forbids any person to make or issue under a penalty, yet it was competent to the legislature to enact otherwise, and expressly to declare, that although it was forbidden to make, issue, or receive any such note, and a penalty was inflicted on those who violated its provisions, yet the note, when issued and received, should be available to enable the person who had received it, to sue for and recover the amount due on the face of the note, from the individual or bank who made it, and by the 7th section this was done; and this section made the note valuable, the subject of a suit, and of larceny, as if the act declaring such notes not the subject of a suit, or of larceny was repealed.

The fallacy consists in arguing this case as if the seventh section were not in existence; as if the law of this case depended on the general law, or the thirteenth section of the act of 1814 which are repealed, and was not to be decided by the provisions expressly made to govern it.

These notes are then property, subjects of larceny, and being so, are, when stolen, subject to all the incidents of other stolen property; that is, they can be recovered from the thief, or receiver of the theft, with knowledge of the theft, and of course, payment may be stopped when demanded by the thief, or any person acting as his agent, or who received it with notice that the note was stolen.

As to not having given notice to prove ownership, this objection is taken without due reflection. The form of action adopted by the plaintiff made it necessary for him to prove his right to the note; to have given him notice to prove his right would be not only idle but absurd, and the more so, in this case, because Mr. *Girard*, when the note was presented to him, told the plaintiff, " this note belongs to the Bank of the United States, it was stolen from them, they have given me notice to stop the payment of it; I will not pay nor return it to you because you are not the owner." On this the plaintiff might still have sued for the amount of the note, or might sue to recover the possession of the note, and he chose the latter. The suit then was brought, and the form of action selected to try who was the owner of the note. On this ground no usage, no precedent, is produced of any such notice to a plaintiff in trover. Besides, the defendant does not ask the plaintiff to prove any thing. Under his plea he can by

(Sylvester *v.* Girard)

law defeat the plaintiff by shewing title in himself, or a third person, and either will equally defeat the plaintiff's recovery.   3 *Starkie,* 1504.   14 *Johns.* 128.   11 *Johns.* 529.

When the holder of a note sues for the amount due on it, and the defendant pleads that he did not assume to pay it, the plaintiff has no notice that his right to the note will be disputed; but when he presents a note to the maker who retains it, and says, ' I will retain it, because it is not your property, but that of another person from whom it was stolen,' and on this the holder selects to try the very question whether he has a good right to the note or not, he cannot be surprised on the above ground, for he must be nonsuited unless he shows a right to the possession of the note.   The third exception is on a point which did not arise in the cause.   If the plaintiff had delivered to *Clew* his note of nine hundred and twenty-eight dollars and sixty-four cents on receiving this one thousand dollar note, or if the plaintiff on receiving the note in question, had, according to his statement of what was intended, entered a credit on that note before he was informed of the theft, a question might have arisen on which it seems different opinions have existed.   But nothing like this occurred.   The plaintiff neither gave any present consideration for the note, nor credit on any past debt; before either had occurred, he was told it was a stolen note.   It would then be a waste of time for this court to enter into the discussion of whether a note was void in whole or in part, when that note or its validity or invalidity can have no effect in this cause, and could not have had any effect unless there was some colour of proof that the nine hundred and twenty-eight dollar note of *Clew* had been given up in consideration of the note in question.

If *Clew* had proposed to buy a horse, and the owner went to get change for this one thousand dollar note, and had been told it was stolen, and returned and kept his horse, how could he say he had given a valuable consideration for the note, or any consideration at all?

It occurs too often in this state, that matters having but little connection with the cause, and therefore not much attended to by the judge, are made the subject of assignment of error and reversal of the judgment, and this has often been found a great evil.   If, however, the matter has a bearing on the point trying, it must be considered on error brought; but it would be too much to reverse for what, on all that appears before us, has no more connection with this case than any other case in court.

Judgment affirmed.