Weaver, Mayor, v. Toney, Judge.

---

CASE 69—PETITION FOR WRIT OF PROHIBITION—DEC. 9.

# Weaver, Mayor v. Toney, Judge.

### COURT OF APPEALS, ORIGINAL JURISDICTION.

1. COURT OF APPEALS—JURISDICTION IN MATTERS OF PROHIBITION.— The Court of Appeals has jurisdiction in an original proceeding to award a writ of prohibition to prevent a circuit court from deciding a case of which it has no jurisdiction.
2. INJUNCTION—MANDATORY, WITHOUT NOTICE.—A circuit court has no jurisdiction to award a mandatory injunction affording the entire relief prayed in the petition without notice to the parties to be affected.
3. SAME—DISOBEDIENCE OF VOID INJUNCTION NO CONTEMPT.—Where a mandatory injunction has been granted without notice giving the entire relief prayed for in the petition, such injunction is void and the court is powerless to punish its violation by contempt proceedings.
4. SAME—WHERE INJUNCTION WAS UNAUTHORIZED BY THE FACTS.—A plaintiff in a petition for an injunction can not unnecessarily delay the institution of his suit until the danger to his right becomes imminent and then obtain an injunction without notice.

| | |
|---|---|
| 107 | 419 |
| e110 | 855 |
| 110 | 856 |
| 107 | 419 |
| 112 | 471 |
| 107 | 419 |
| 113 | 793 |
| 107 | 419 |
| e116 | 809 |
| 107 | 419 |
| e116 | 809 |
| 107 | 419 |
| 120 | 381 |
| 120 | 383 |
| 107 | 419 |
| d122 | 293 |
| 107 | 419 |
| 127 | 157 |
| 107 | 419 |
| 138 | 244 |

5. ELECTIONS—RIGHT OF FACTION OF A PARTY TO INSPECTORS.—The
   right of a political party to have inspectors at the count of the
   vote is a right belonging to a known political party and not
   to a faction of a party whose candidates have their names put
   on the ballot by petition. The "Honest Election Democratic
   Party" was not therefore entitled to have inspectors at the
   count of the vote at the November election, 1899.

6. SAME—JURISDICTION OF COURTS OF EQUITY TO CONTROL POLITICAL
   ACTION.—A court of equity has no jurisdiction by mandatory
   injunction to compel officers of election exercising *quasi judi-
   cial* functions to admit inspectors to the count of the vote.

KOHN, BAIRD & SPINDLE FOR PLAINTIFF.

1. While this court has appellate jurisdiction only, as a necessary
   incident to such jurisdiction. and especially by virtue of sec-
   tion 110 of the Constitution, it has jurisdiction to issue writs
   of prohibition and mandamus in aid of its appellate jurisdiction
   and for the purpose of supervising the jurisdiction of inferior
   courts and confining inferior courts within their proper juris-
   dictions. Marbury v. Madison, 1 Cranch, 200; Hindman v. Toney,
   97 Ky., 413; Kelly v. Toney, 95 Ky., 338; Louisville Industrial
   School of Reform v. City of Louisville, 88 Ky., 584; Goldsmith
   v. Owen, 95 Ky., 420; Preston v. Fidelity Trust, 94 Ky., 295.

2. A court is without jurisdiction and its judgment will be void
   unless it be such that it is authorized by law in the class of
   cases to which the case before the court belongs. It must appear
   that the court has power to render the particular judgment the
   case presented calls for to bring the case within the jurisdic-
   tion of the court; the court must have power to hear and de-
   termine the case presented and to render the judgment called
   for. Works on Courts and their Jurisdiction, sec. 8, pp. 17, 18.

3. Under the Constitution of Kentucky our Government is divided
   into three distinct departments, neither of which can encroach
   upon or exercise the powers or functions of the other, and any
   encroachment of the judiciary upon the executive department
   is *ultra vires* and void. Marbury v. Madison, 1 Cranch, 200;
   Works on Courts and their Jurisdiction, sec. 29, pp. 183, 187.

4. The holding of an election and the exercise of the privilege of
   voting is essentially political, and all political functions of the
   Government belong to the executive department. Marbury v.
   Madison, 1 Cranch, 200; *Ex parte* Sawyer, 124 U. S., 200; Works
   on Courts and their Jurisdiction, pp. 186-7.

5. Courts have no inherent jurisdiction of contested elections. Their
   power is derived wholly from statute. Taxpayers v. O'Kelly,
   22 So. R., 311; Stine v. Berry, 96 Ky., 66.

Weaver, Mayor, v. Toney, Judge.

6. Even by the common law writ of mandamus a common law court can not control or direct a ministerial officer where he is to exercise any matter of judgment or discretion. In such cases its power is exhausted when it commands him to act or proceed, but the court has no power to direct what action he shall take. Where the officer is to determine the authenticity of a paper or the validity of a vote he is exercising *quasi* judicial functions and judgment, and the court even by mandamus can not control his action. So, even in counting ballots, though this be a ministerial duty in advance of a contest, the court can not by mandamus direct the officer as to what ballots shall be counted, nor what returns shall be made by a canvassing board. Anderson v. Likens, 20 Ky. Law Rep., 471 and 1001; Dent v. Board of Commissioners, 32 S. E. R., 250; Dalton v. State, 43 Ohio St., 652; Taylor v. Kolb, 100 Ala., 603. In the last named case it was held that the court had no jurisdiction to compel by mandamus election officers to make a certain division called for by the statute of the election inspectors among certain political parties, much less for the court to name the inspectors thus to be installed in office.

7. A court of equity has jurisdiction only over property rights, and has never assumed jurisdiction over political rights or in any manner to control political functions, and has no power or juricdiction to interfere in matters political; and when it attempts to so interfere by injunction its authority may be defied or ignored without incurring the court's process for contempt. High on Injunctions, secs. 1243, 1250, 1312, 1316; Spelling on Extraordinary Remedies, vol. 1, secs. 630, 692; Cain v. Page, 19 Ky. Law Rep., 977; Wellenvoss v. Knights of Honor, 20 Ky. Law Rep., 113; Clark v. Wallace, 20 Ky. Law Rep., 154; Sheridan v. Colvin, 78 Ill., 237; Dickey v. Read, 78 Ill., 261; Walton v. Devlin, 61 Ill., 205; Darst v. People, 62 Ill., 306; Harris v. Shryock, 82 Ill., 119; *Ex parte* Sawyer, 124 U. S., 200; Alderson v. Commissioners, 9 S. E. R., 868; Fleming v. Guthrie, 9 S. E. R., 23; Bates v. Taylor, 11 S. W. R., 266; Smith v. Meyers, 9 N. E. R., 692; Com. v. Howley, 42 Atl., 525; Peck v. Weddell, 17 Ohio St., 283; Ingerson v. Berry, 14 Ohio St., 315; Smith v. McCarthy, 56 Pa. St., 359; Green v. Mills, 155 U. S., 651.

HELM, BRUCE & HELM FOR DEFENDANT. (BRIEF AND PETITION FOR A REHEARING.)

1. "The Court of Appeals shall have appellate jurisdiction only." Ky. Con., sec. 110. The provision that the court shall have power to issue such writs as may be necessary to give it a general control of inferior jurisdictions only applied to such writs

as may be necessary to be issued in aid of the court's appellate jurisdiction. Hindman v. Toney, 97 Ky., 413; Preston v. Fidelity Trust Co., 94 Ky., 295; Goldsmith v. Owen, 95 Ky., 420; Louisville Savings L. & B. Assn. v. Harbison, Judge, 21 Ky. Law Rep., 278; 16 Ency. of Pl. & Pr., p. 1098; Ex parte Morgan Smith, 23 Ala., 106; State v. Falls, 32 La. Ann., 553; Winn v. Scott, 2 La., 89; Harriman v. Waldo County, 53 Me., 83; State v. Ross, 122 Mo., 435; People v. Court of Common Pleas, 43 Barbour, 278; Perry v. Shappard, 78 N. C., 83; Hunter v. Moore, 39 S. C., 394; Yearing v. Spears (Utah), 10 Pac. Rep., 609.

2. The order of the Jefferson Circuit Court of November 7, 1899, was not a final order. The true test of a final order is not as to whether or not obedience to it will render any further order in the cause unnecessary, but is as to whether or not it was intended by the court as a final determination of the rights and liabilities of the parties to the cause in the matter involved in the order. The courts have evidently always proceeded on the principle just stated in making preliminary orders mandatory. Schmidt v. L. & N. R. R. Co., 19 Ky. Law Rep., 666; Toledo, &c., R. Co. v. Penn. R. R. Co., 54 Fed. Rep., 741; Coe & L. & N. R. R. Co., 3 Fed. Rep., 775; Lane v. Newdigate, 10 Ves., 192; Rankin v. Huskisson, 4 Simmons, 13; Mexborough v. Brown, 1 Beaven, 127. Of course, however, in making a preliminary order which would, either in whole or part, give the plaintiff the relief for which he prays judgment, the court should proceed with great care and resolve every doubt in favor of the defendant. 10 Am. & Eng. Ency. of Pl. & Pr., p. 898; Greanelle v. Mercantile Benefit Assn., 35 N. Y. Sup., 790; Coe v. L. & N. R. R. Co., 3 Fed. Rep., 775 High on Injunctions (3d ed.), vol. 1, sec. 2; Longwood Valley R. R. Co. v. Baker, 27 N. J. Eq., 66.

3. As the order of November 7, 1899, was not a final order or judgment, but a mere interlocutory order, notice to the defendant before entering it was not essential to its validity, although the giving or withholding of such notice may have a strong bearing on the question of the propriety of the court's action in entering the order    The court has a discretion in the matter of making preliminary orders in suits for injunction as to whether it will or will not make any order without notice. (Code, sec. 276). But an abuse of this discretion does not render void such an order made without notice.

4. Political rights are the subject of judicial protection in Kentucky in cases involving no property rights. Purnell v. Mann, 20 Ky. Law Rep., 1146; Commrs. of Sinking Fund v. George, 20 Ky. Law Rep., 938; Clerk of Whitley County Court v. Lester, 20 Ky. Law Rep., 481; Hopkins v. Swift, 100 Ky., 14; Southall v.

Griffith, 100 Ky., 91; Hocker v. Pendleton, 100 Ky., 726; Todd
v. Dunlap, 99 Ky., 449; Lafferty v. Huffman, 99 Ky., 80; Shelley
v. McCollough, 97 Ky., 164; City of Lexington v. Wilson, 97 Ky.,
707; Goodloe v. Fox, 96 Ky., 627; Berry v. McCulloch, 94 Ky.,
246; Clark v. McKenzie, 7 Bush, 523.

5. The question of whether a cause of action should be prosecuted
by an action at law or one in equity is not a jurisdictional ques-
tion in Kentucky, but merely one of propriety of forum. And
therefore, though a mistake be made in this matter by the plain-
tiff, it is not cause for dismissal of the action, nor are the orders
of court made in such action void. Code, sec. 8; Lansdale v.
Mitchell, 14 B. Mon., 282; Trustees of Lebanon v. Forrest, 15 B.
Mon., 168; Greenup County v. Maysville, &c., R. Co., 88 Ky., 663.

6. The merits of the questions involved in the action in the circuit
court as to the right of the Brown party to inspectors can not
be considered by this court on a petition for writ of prohibition
against the judge of the circuit court, seeking to prohibit him
from making any further orders in the cause or from punishing
for contempt those who have disobeyed orders heretofore made.
Arnold v. Shields, 5 Dana, 21; Goldsmith v. Owen, Judge, 95
Ky., 420.

CHIEF JUSTICE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

At about midday of Monday, November 7, 1899,—the
day of the recent State election,—the Honorable John
Young Brown, the gubernatorial candidate of the "Honest
Election" Democratic party, filed his petition in equity in
the Jefferson Circuit Court, Law and Equity Division,
against Charles P. Weaver, Mayor of the city of Louis-
ville; Lyons, Tierney and Suter, members of the Board
of Public Safety; Jacob H. Haager, Chief of Police, and
some seven hundred and fifty other defendants, who were
officers of election at the various voting precincts in
Louisville on the day in question. The purpose of the suit
was to have an injunction commanding the election offi-
cers to admit to the voting places as soon as the polls
should close at 4 o'clock, one person as inspector at each
voting place, as representative of the Honest Election
Democratic party. The vital ground of complaint was

that the County Board of Election Commissioners for
Jefferson county, acting by a majority, had theretofore
(that is, prior to November 6, 1899, as the petition was
sworn to on that date) issued written instructions to the
officers of election to the effect that inspectors or rep-
representatives of the Honest Election Democratic party
were not to be admitted to the polls, and that unless con-
trolled by the order of the court the officers of election
would obey these instructions.

The plaintiff further averred that he feared and charged
that the Mayor, Board of Public Safety and Chief of Po-
lice either had issued, or would cause to be issued and
enforced unless restrained by the court, instructions to
the police not to allow such inspectors to enter the vot-
ing places, and to arrest any who attempted to do so. It
was further averred that irreparable injury would re-
sult to plaintiff from the delay in giving notice of the ap-
plication for the injunction, and a "temporary" order was
therefore prayed for, embodying the relief sought in the
petition; the temporary order, indeed, embodying the
whole of the relief sought. Such orders were thereupon
at once issued, signed, by the judge of the court men-
tioned, commanding the election officers to admit at the
close of the polls the inspectors of the party named, pro-
vided they presented a certificate from one Wright, chair-
man of the committee of the Honest Election Democratic
party, and commanding the Mayor and Board of Safety
not to give to any policeman of the city any order to in-
terfere with such inspectors, and commanding the Chief
of Police to instruct the policemen that such inspectors
had the right to enter the voting places and witness and
inspect the count.

The orders thus obtained further recited that on No-

vember 14, 1899 (time and place stated), the plaintiff would move the court to grant an injunction pursuant to the prayer of his petition. Subsequently to the granting of the temporary writ, and prior to the day on which the injunction proper was to be asked, on complaint by certain inspectors of the party in the order named, who had been refused admittance to the voting places, rules of contempt were issued by the judge who had issued the writ of the 7th against certain of the defendants in the Brown-Weaver action, and certain others, requiring them to appear and show cause why they should not be punished for disobeying the order of the 7th of November. Thereupon the persons so ruled, together with other defendants in the Brown-Weaver suit, filed their petition in this court on November 15th for an order prohibiting the judge of the court aforesaid or that court from proceeding further with the trials for contempt. A temporary stay was granted, and a day set for full hearing, which having been had, after answer filed by the judge aforesaid, the case is now out for decision.

The first question raised is, as to the jurisdiction of this court to make the order. The case has been presented by counsel as one involving solely the jurisdiction of the lower court to issue the mandatory order of the 7th of November, and for the present we shall so consider it. Assuming, then, preliminarily, that the lower court had no jurisdiction to enter such an order, the question remains, has this court—admittedly one of appellate jurisdiction only—power to control inferior courts when acting outside of their jurisdiction?

In Preston v. Fidelity Trust & Safety Vault Co., 94 Ky., 295; [22 S. W., 318]; Goldsmith v. Owen, 95 Ky., 420; [26 S. W., 8], and Louisville Savings L. & B. Association v.

Harbeson, Judge, &c., 21 Ky. L. R., 278, [51 S. W., 787], the power of this court to issue writs of prohibition seems to have been assumed, rather than in terms asserted; the writs sought being denied because it did not appear that the inferior courts were proceeding out of their jurisdiction. All these cases present very persuasive evidence in support of the jurisdiction.

And in Hindman v. Toney, 97 Ky., 413; [30 S. W., 1006], this court expressly settled the question, and, on the petition of Hindman, granted a writ prohibiting one of the circuit judges of Jefferson county from passing on the case, which properly had been assigned to another division of that court. And the writ was awarded, it may be said here, although by express statute (Kentucky Statutes, section 1028) no proceedings in a case were to be invalid because prosecuted in the wrong branch of the Jefferson Circuit Court. It was hardly a question of jurisdiction in the lower court, therefore, but rather a question of preventing confusion and conflict in the conduct of business in the four branches of that court. It was held in that case that this court, having a discretion, ought not generally to issue writs of prohibition, when adequate relief can be afforded complainants by resort to the "revisory power,"—meaning the appellate jurisdiction of this court.

In view of these cases, it must be regarded as settled law that in proper cases, where the inferior tribunal is proceeding out of its jurisdiction, the power of this court may be invoked to stay the exercise of such jurisdiction; and it would also seem, in certain classes of cases, that even where the inferior tribunal has jurisdiction this court may likewise interfere, if the remedy by appeal is not entirely adequate, or if the court, in the exercise of its

discretionary powers, shall deem it necessary to so interfere.

Looking at the case for the present in the light of the way it has been presented (that is, as involving the jurisdiction of the lower court), we find it to be contended, first, that that tribunal is without power to inflict punishment for disobedience of its order of the 7th of November, because that order was made without notice to any of the parties affected by it. It is conceded that the order was issued without notice, and it is clear that, if notice was necessary, disobedience of it would not be punishable contempt. That notice is necessary is, we think, equally clear; otherwise, there would be judgment entered, final in its character, and decisive of the whole question before the court, without citation or opportunity offered to the parties interested to resist the application.

To proceed without notice would be a final adjudication upon and a deprivation of a right, without due process of law. Under general law, as well as under our statute, there must be notice in mandamus proceedings before such an order can be granted. And this is equally true when the proceeding is for an injunction. The statute is explicit, and declares that "an injunction shall be granted only upon reasonable notice, in writing, to the party sought to be enjoined, of the time and place of the application therefor, and of the court or officer to whom the application is to be made." (Civil Code, section 276.) Where, however, the court or officer to whom the application for an injunction is made "shall be satisfied by the facts set forth in the affidavit of the applicant or by other evidence, that irreparable injury will result to the applicant from the delay of giving notice, the court or officer may enter a

temporary order restraining the act or acts sought to be enjoined, or it may be mandatory in its nature, if the case so require." This provision for a temporary restraining order has no application to the case at hand. The order is not a mere temporary restraining order, mandatory in its nature. The relief sought and granted is the *whole relief obtainable.* When the order is obeyed the end of litigation is reached. There is no mere temporary stay, with reservation of the rights of parties until they can be heard. If a railroad is about to stop operating a road it is under a contract to operate, it may be enjoined from stopping, and be commanded to continue the operation temporarily. This may result in some temporary inconvenience or pecuniary loss, but the subject-matter of the litigation is left for future investigation, and the rights of the parties are reserved. This is a fair illustration of what this provision means. And so it is further provided in the section *supra* that the court or judge "shall set forth a reasonable time and place not to exceed ten days from the day upon which the order is made, at which the applicant shall move the court or judge *to grant the injunction*," etc.

If we attempt to apply these Code provisions to a case where the act commanded to be done is not of a mere temporary matter, but is practically a finality, and the sum total of the relief sought by the applicant, we must appreciate at once the inapplicability of the section. Imagine the applicant in this case applying to the judge on *November 14th* for an injunction commanding the election officers to admit the Brown inspectors to the voting places on *November 7th!* The order made to admit the inspectors is a peremptory mandamus, and "when a peremptory mandamus is granted without the service of notice the man-

damus is void, and a respondent who· has not been served with notice can not be punished for contempt for not obeying the writ." 13 Am. & Eng. Encyc., 759, citing State v. Scott Co., 42 Minn., 284; [44 N. W., 64]; Jones v. McMahan, 30 Tex., 719; U. S. v. Labette Co. (C.C.) 7 Fed. 318. "When a court of chancery is without authority, its injunction is a nullity, and it is not contempt of court to disregard it." Ex parte Wimberly (Miss.; 1880), 1 Ky. Law Rep., 127. This so-called temporary restraining order is in *substance* imperatively mandatory, and we must look at the *substance*, and not the *shadow*, of things.

In the second place, even the law authorizing a temporary restraining order without the service of notice, if irreparable injury may result from the delay of giving notice, does not apply here, because no such condition ·of fact is shown to exist. The petition was sworn to on November 6, 1899, and the averment is that· the election commissioners had issued written instructions to the precinct officers not to admit the Brown inspectors, and that unless restrained the precinct officers would obey their instructions.

Manifestly, on this showing, the applicant, on November 6th, and even before that day, was as· fully aware of the expected obedience of the precinct officers to the written instructions of the commissioners as he was at noon on the 7th; and he had the same grounds on the 6th, and before that day, for the belief that they would obey these instructions, as he had on the 7th. He could not, therefore, wait, in order to get an *ex parte* order, until he could technically and perhaps truthfully say he would suffer irreparable injury from the delay of giving notice. Thus, an Indiana statute provided that no injunction should be granted, except in cases of emergency, until the adverse

party had had previous notice, etc. In Vance v. Workman, 8 Blackf., 306, a bill was filed to restrain the defendants from selling certain land upon execution; and, although the bill was filed on the same day the sale was to take place, it was held not to be a case of emergency, the court saying: "True, the bill was filed on the day on which the sale which the injunction was to prevent was to take place; but no excuse is offered, no reason assigned, why it was not filed earlier, nor for the failure, if there was a failure, to give the ten-days' notice of the intention to file it."

In Indiana Cent. Ry. Co. v. State, 3 Ind., 424, a railroad company commenced the construction of its road on the land of the complainant, and was making excavations thereon, and preparing to lay down its track, when complainant obtained an *ex parte* writ to enjoin the company. The court held there was not a case of emergency, within the meaning of the statute.

In referring to the Vance-Workman Case, the court said: "The principle here asserted is that the complaining party must not only show that immediate injury is about to be inflicted, but also that he could not reasonably have anticipated it in time to give the requisite notice. Otherwise, the complainant might always make a case of emergency by waiting until the act he desires to have restrained is upon the point of being done."

In the case at hand, the applicant for the injunction, at a date when there was apparently still ample time to give the reasonable notice required by the law, is found saying that he is in possession of facts which cause him to believe that he will be irreparably injured from the delay of giving notice. If there was in fact not time to give notice on the 6th, the petition ought to have disclosed the

fact. It is not, therefore, a case where notice can be dispensed with; but, on the contrary, it is a case where the face of the application shows that notice was demanded by the very terms of the statute, and where, therefore, the court was without statutory authority to issue the writ, except after notice. It may be admitted that, if the order was in fact and in substance a mere temporary restraining order, the question of whether irreparable injury might result from the delay in giving notice would be addressed to the chancellor's discretion, and his order would be merely an error, if he abused his discretion. But when the order is final in its character the question becomes in a measure a jurisdictional case.

As we have seen, the writ of prohibition may go, in a certain class of cases, even if the inferior tribunal may have, in general, jurisdiction of the subject-matter of the litigation. Such was the situation in the Hindman-Toney Case.

So, in State v. Wear (Mo. Sup.), [36 S. W., 363; 33 L. R. A. 348], the chancellor was held to have jurisdiction in vacation without notice to appoint a receiver of a railroad company. But, because the time for hearing was put some three months in the future, the Supreme Court held it was an arbitrary exercise of judicial power, and granted a writ of prohibition staying the execution of the order for the receiver. The court held that "an excessive and unauthorized application of judicial force, although in a case otherwise properly cognizable by the court or judge in question, may be prevented by prohibition," and that "no temporary receivership can rightly be set up, to last three months, without affording first a hearing to the party whose possession of property is determined by such an order."

Before leaving this branch of the case, it is proper to notice that, while we have treated the order of the 7th of November as a command to admit the Brown inspectors, and therefore as being mandatory in character, still that order may be regarded as one likewise preventive in character, and as forbidding the defendant officers from interfering with the admission of the inspectors to the polls. But, whether the order be regarded as of the one or the other character, it is a *final* order, in all essential respects, and not a merely temporary one.

Issues are also joined in the pleadings on the question whether the Brown party was entitled to inspectors. This is a matter which might eventually be raised on appeal. But as yet there is no final order or judgment from which an appeal can be taken, and may never be. There is certainly no occasion for further order in the lower court respecting this question, the former order having fully accomplished the object sought in the petition. Barring the views already presented, there would seem, therefore, to be no adequate remedy for those about to be imprisoned under what is claimed to be an erroneous decision, unless the question is considered on this application. We think, therefore, the question is fairly raised on the record.

If we are right, however, on the matters heretofore discussed, little need be said on this last question. From the averments of the pleadings, the exhibits filed, and such of the current history as we may fairly take into consideration, we are of opinion that the Honest Election Democratic party is a part and parcel and faction of the regular Democratic party; differing from the regular party in some of the local and State issues, but indorsing the utterances of the platform and principles of the regular Democratic party as expressed in its last national convention. We

do not think it is a distinct political party, nor do we think it has ever claimed so to be, or so regarded itself. And while it may or may not be true that only such political parties as cast two per cent. of the vote at the previous election are the political parties entitled to inspectors under the statute, we think it reasonably clear that right is conferred on such a body or party as constitutes a distinct political party.

In the McKinley Citizens' Party Case, 6 Pa. Dist. R., 109 (10 Am. & Eng. Enc. Law [2d Ed.], 641), it is said: "In order to constitute a body of electors a political party, it must have distinct aims and purposes, being united in opposition to other bodies in the community within which it exists. A mere faction of an established party will not constitute a distinct political party," etc.

Our statutes (subsection 3, par. 1596) provide that the county board shall appoint two judges, one clerk and one sheriff at each voting precinct, and, "so long as there are two *distinct political parties* in this Commonwealth, the judges, clerk and sheriff of election . . . shall be so selected and appointed as that one of the judges at each place of voting shall be of one political party, and the other judge of a different party; and there shall be the like difference at each voting place between the sheriff and clerk of election," etc. And further: "Each political party may appoint one challenger for each precinct, who shall be entitled to stay in the room, or at the door thereof." Kentucky Statutes, section 1470. And again: "The county executive committee of each party having a ticket to be voted at an election may designate a suitable person to be present at, witness and inspect the counting of the vote in each precinct, who shall be admitted to said voting place." Section 1481.

[28]

The law does not confer this right to have inspectors on any individual, or group or party of individuals, as such, but, as we think, on each political party. And not on it, unless it had a ticket to be voted at the election. A single individual might have his name placed in the official ballot, by petition or otherwise, as the sole representative of a known political party; if so, his party is entitled to inspectors; or a group of candidates might have their names so placed, and, as representatives of their political party, they would be entitled to inspectors; or it may be that a new political party may be formed, with distinctive aims and purposes, and not allied with any of the existing parties, and be entitled to such inspectors. But in every case the right must rest on the fact that the individual or group or list of candidates is the representative of a distinct political party, and not the representative merely of a part or faction of an existing political party.

We think, therefore, without elaborating the point further, that the candidate, Brown, was not entitled to have the inspectors.

An important matter urged by counsel for the plaintiff in the application, and to which we shall now refer, is that the right of the candidate, Brown, to have admitted to the polls an inspector who is appointed by the executive committee of his party is a political right, and therefore not one enforceable in a court of equity.

This contention is supported by the elementary writers, and by numerous decisions in the courts of other States, as well as by several of this court.

We note, among other cases, that of Fletcher v. Tuttle, 151 Ill., 41; [42 Am. St. R., 220; 37 N. E., 683, 25 L. R. A., 146], where the doctrine is thus aptly stated:

"The question then is whether the assertion and protection of political rights, as judicial power, is apportioned in this State between courts of law and courts of chancery, are a proper matter of chancery jurisdiction. We would not be understood as holding that political rights are not a matter of judicial solicitude and protection, and that the appropriate judicial tribunal will not, in proper cases give prompt and efficient protection, but we think they do not come within the proper cognizance of courts of equity."

And in Sheridan v. Colvin, 78 Ill., 237, the same court approved the doctrine announced in Kerr on Injunctions, sections 1-3, that: "It is elementary law that the subject of the jurisdiction of the court of chancery is civil property. The court is conversant only with questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation on which the jurisdiction rests. The court has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right of property. Nor do matters of a political character come within the jurisdiction of the court of chancery. Nor has the court of chancery jurisdiction to interfere with the public duties of any department of the Government, except when necessary for the protection of property rights."

In Alderson v. Commissioners (W. Va.), [9 S. E., 868; 5 L. R. A., 334], it was held that elections are essentially political, and courts have no jurisdiction by injunction to interfere.

In re Sawyer, 124 U. S., 200; [8 Sup. Ct., 482; 31 L. Ed., 402], it was held that a court of equity has no jurisdiction of crimes or any matters political, or of any matters purely administrative in their nature. So, in Peck v.

Weddell, 17 Ohio St., 283, it was said that a court of equity had no jurisdiction to enjoin an election officer from recording an abstract of a vote, although the vote about to be recorded was charged to be fraudulent; that the only mode of purging an election of fraud was by a contest, and by executing the criminal laws. See, also, High on Injunctions, sections 1312-1315.

Our own decisions are no less emphatic, where the question has been considered.

In Trustees Common School, &c., v. Garvey, &c., 80 Ky., 164, the principal objection urged against the validity of an election in a common-school district, with reference to the imposition of a tax, was, as the court said, "as to the manner in which the judge of election was chosen," and it was said: "It is not pretended that the law did not authorize the imposition of such a tax, or that the property levied on was exempt from taxation. So there is nothing in the record that will authorize a chancellor to adjudge the election void and the taxation illegal. And, although this is not strictly an election, the door of the court of equity will not be opened to those whose only purpose is to invite the chancellor to supervise the action of judges of an election, and, if so, to declare the election void, or some other person than the one chosen as judge [of the election] to have been elected." And the court held that whether an action against the judge of the election for usurpation of office could be maintained, or proceedings by *quo warranto* be instituted, was a question not necessary to decide, but that "it is certain that the chancellor will not exercise such a jurisdiction;" (citing Cooley, Const. Lim., page 770.)

In Clarke v. Rogers, 81 Ky., 47, Judge Pryor, for the court, said: "A court of equity is asked, in effect, to

hold another election for the purpose of determining who were legal voters, and to purge the polls by striking from the list of recorded voters those who had no right to participate in the election. The testimony for and against the right of a citizen to vote is asked to be weighed by the chancellor, and determined from the testimony. A court of equity should neither invite nor claim such a jurisdiction." And the court said further that "it would be enlarging the field of equity jurisdiction to determine that it is the duty of the chancellor to investigate the rights of the citizens at the ballot box in the election," etc.

It is claimed that a number of recent cases hold to the contrary. We do not so find. Several agreed cases have been considered where the object sought was to test the constitutionality of certain statutes, and this court has considered the cases on their merits. No reference in the court below or in this court was made to the question of chancery jurisdiction.

In Berry v. McCollough, 94 Ky., 247; [22 S. W., 78] (a case also relied on by the defendants), the question of the power of the chancellor to entertain the question involved was made by the appellee; but the court expressly waived the point, and decided the case for the appellee on other grounds. But it may be noted that in that case appellant, the actual incumbent of the office, charged that the appellee was an intruder, and was embarrassing the plaintiff in the discharge of his public duties. This was also true in the Hopkins-Swift Case, 100 Ky., 14; [37 S. W., 155]. And these averments are held generally to confer jurisdiction on courts of equity. (2 High on Injunctions, section 1315.)

It is said, however, that in these cases, tried below in equity, and heard here on appeal, the judgments below

must have been treated as wholly void, unless we had
regarded the chancellor as having jurisdiction, because
neither the parties nor the court could waive the question
of jurisdiction. If by "jurisdiction" reference is had solely
to the power of the court to entertain the question pre-
sented, then there could be no waiver or agreement con-
ferring jurisdiction. But, when we speak of lack of power
or jurisdiction in a court of equity to consider other
than questions of civil rights, we have reference
solely to the occasion for the exercise of the court's power.
Thus, in People v. McKane, 78 Hun., 154; [28 N. Y. Supp.,
981], the distinction was pointed out between the use of
the term "jurisdiction" as referring to the power of the
court to hear and determine the application for the injunc-
tion, and the use of that term as referring to the occasion
for the exercise of the court's power, which is "equitable
jurisdiction," the court saying: "This distinction, while
clearly pointed out in the best works on equity juris-
prudence, has not always been observed in judicial opin-
ions; and the expression 'jurisdiction' has been used where
writers meant only to inquire whether the facts before the
court presented a case for the proper exercise of the power
of a court of equity."

While in this State or in New York legal and equitable
actions are, in a measure, blended as to form, principles
remain the same, and the chancellor, unless he is so em-
powered by statute, will not interfere by injunction where
previous to our Code he could not do so. See, also, Wood-
ruff v. Fisher, 17 Barb., 224. The litigants may therefore
waive objection to the form of the action, and the judg-
ment will not be so wholly void that it may be attacked
in a collateral proceeding. Still, as we have already seen,
as in the Missouri case cited, a writ of prohibition may be

applied for to stay the chancellor if proceeding beyond his equitable jurisdiction.

It is said, however, that the remedy by mandamus is wholly inadequate in cases of this kind, because there can be no such writ issued until there has been a refusal or omission to do the act required of the delinquent, and to wait until after this refusal or omission would be to wait until the wrong was done. That such a writ will not be awarded ordinarily until after demand or refusal is true; but when the act required to be done involves the discharge of a public duty the rule seems not so strict, but the writ may go, if the conduct and statements of the delinquent show that he does not intend to perform his 'duty. Thus, in Morton v. Comptroller General, [4 S. Car., 431], it was held that, where an officer charged by law with performance of a duty on or before the day fixed by law gives notice that he does not intend to perform that duty mandamus lies to compel him. 10 Enc. Pl. & Prac., 618. But if the rule is otherwise, and mandamus may not be granted in anticipation of a supposed omission of duty,— and this view, it may be admitted, is supported by the weight of authority (High's Ex. Legal Remedies, 312),—still there could rarely be cases of serious hardship. The presumption is that officers will ordinarily perform their du ties, and especially so when heavy penalties are prescribed for failure to do so. The right of the judiciary to inter- fere with the administrative processes provided by law for the conduct of an election, if it exists at all, ought to be rarely exercised. The law has imposed on certain ex- ecutive and administrative officers the duty of conduct- ing elections, and it is of the utmost importance that, in the exercise of the powers and the discharge of the duties and responsibilities confided to such officers, they should

not be controlled or interfered with, at least whilst engaged in the actual duty of holding the election. Moreover, instances of such interference will be the rarer, because generally the performance of the various duties im posed on the officers will be found to involve the exercise of intelligent discretion and judgment, and this *quasi* judicial function is confessedly without the sphere of judicial interference.

In the case at bar the proper construction of the law as to inspectors may not be the subject-matter of such discretion, but whether the claim of the Honest Election Democratic party that it is a party within the meaning of the statutes, and is therefore entitled to inspectors, is well founded, depends not merely on a proper construction of the law, but, as we have seen, on the existence of important facts making or not making it a "party," within the meaning of the statutes, and which facts must be investigated and passed on by the precinct officers.

Thus, in Taylor v. Kolb, 100 Ala., 603, [13 South., 779], it was held that a court has no jurisdiction, even by mandamus, to compel election officers to name election inspectors under a statute providing that such inspectors were to be appointed from opposing political parties.

In Dalton v. State, 43 Ohio St., 652; [3 N. E., 685], it was held that a court has no jurisdiction, even by mandamus, to compel election officers to certify or reach certain results. The doctrine is fully enunciated in High, Ex. Legal Remedies, sections 42-46.

On the whole case, we conclude that the chancellor was without jurisdiction to control or direct the plaintiffs in the manner sought, and therefore the writ of prohibition heretofore temporarily granted is now made perpetual.