CASE 95—ACTION BY GEORGE DENNY AND OTHERS AGAINST H. M. BOS-
WORTH AND OTHERS FOR A MANDATORY INJUNCTION.—JUNE 14.

# Denny &c. v. Bosworth &c.

### APPEAL FROM FAYETTE CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL.   REVERSED.

ELECTIONS—POWER OF ELECTION COMMISSIONERS TO CHANGE ELECTION
    OFFICERS—RIGHT OF CANDIDATE TO MANDATORY INJUNCTION TO
    PREVENT CHANGE.

Held:   1. Under election law of October 24, 1900, providing for the
    appointment of election officers from lists designated by the
    county executive committee of the two political parties having
    representation on the State and county boards of elec-
    tion commissioners, the county board having once exer-
    cised the power of appointment, has no power to remove the
    officers thus appointed except for some of the disqualifications
    pointed out in the law, and then they are required to reduce
    to writing the grounds on which they act, which must be made
    a part of the records of the board.
2. Candidates for office were entitled to a mandatory injunction com-
    pelling the county board of election commissioners to set aside
    an unauthorized order removing election officers appointed by
    the board.

FALCONER & FALCONER, J. D. & G. R. HUNT AND R. A. THORN-
    TON, ATTORNEY FOR APPELLANTS.

This petition is filed by George Denny, one of the election
commissioners for Fayette county, Ky., Stanley Milward, S. H.
Crosthwaite and J. Morgan Gentry, the three last being candi-
dates, and nominees of the Republican party for county offices
at the November election 1901, against H. M. Bosworth and C.
W. Miller, election commissioners for Fayette county, and Claude
Chinn, clerk Fayette county court.

The petition alleges that the three election commissioners of
Fayette county, Denny, Bosworth and Miller, on September 20,
1901, met and appointed as required by law, from the list of
eight names designated in writing by the county executive com-
mittee of the Republican and Democratic parties, officers of the
election in each precinct to act for one year, and on Septem-
ber 30 again met and filled certain vacancies that had occurred

in said offices; that all of the officers so appointed were and are duly qualified and had accepted the said appointment and acted at the registration held the first Tuesday in October, 1901; that on the 30th day of October 1901, the appellees, Bosworth and Miller, being a majority of the board of election commissioners, over and against the objection and protest of appellant, Denny, removed the election officers that had been so appointed, and attempted to appoint in their stead others, none of whose names were on the lists furnishel by the Republican committee, but were all members of the Democratic party—and that said pretended removal was without the consent and against the wish of the officers so attempted to be removed, and without notice to them and without cause, except, to obtain an unfair advantage to the party to which said Bosworth and Miller belong.

Notice was given to the defendants of the filing of the petition and that a mandatory injunction would be applied for before the circuit judge, on November 2, at which time the defendants appeared and filed a general demurrer to the petition which was sustained by the court, from which ruling this appeal is prosecuted.

We contend both upon principle and authority:

1. That the appellants have the right to maintain this action.

2. That the court had jurisdiction.

3. That the petition stated facts sufficient to entitle appellants to an ordinary and mandatory injunction.

4. That the appellants had no other appropriate or effective remedy.

5. That wherever a mandamus would issue from a court of common law, a mandatory injunction, in a like case, would issue from a court of chancery; that a writ of mandamus and mandatory injunction are similar in their purpose and accomplish the same end.

We ask that these cases be reversed, that the law may be settled in such cases.

### AUTHORITIES CITED.

Walton v. Washburn, 23 Ky. Law Rep., 1008; Mitchell v. Mattingly, 1 Met., 237; Lawson's Rights, Remedies and Practice, p. 5415. sec. 3434; McCord v. Pike, 121 Ill., 288 (2 Am. Stat. Rep., 85) and notes, pp. 97, 98, 99; Shepard v. Wood, 13 How. Pr., 48, 50; Spring Valley Water Works v. Bartlett, 16 Fed. Rep., 605; Commonwealth v. Tilton, &c., 21 Ky. Law Rep., 1079; Pencille v. State Farmer's Mutual Ins. Co. (74 Min., 67) 73 Am. Stat. Rep., 326; Civil Code, sec. 477; High on Injunctions, secs. 1308, 1309; High's Extraordinary Legal Remedies, secs. 5, 6,

67, 68, 69; Britten v. Supreme Council, 46 N. J. Equity, 102;
Houston County Judge, &c. v. Steele, 18 Ky. Law Rep., 1149;
Weaver, Mayor v. Toney, Judge, 21 Ky. Law Rep., 1157; Berry
v. McCullough, 94 Ky. Rep., 247; Poyntz v. Shackelford, &c.,
21 Ky. Law Rep.; Am. & Eng. Ency. of Law, 2d ed., vols. 19,
737, vols. 16, 342; *Ex parte* Burr, 9 Wheaten, 529; *Ex parte*
Virginia, 100 U. S. Rep., 313; Page v. Hardin, 8 B. Mon., 648;
*Ex parte* Lemmon, 166 U. S. Sup. C. Rep., 548; State v. City
of Duluth (53 Min., 238) 39 Am. Stat. Rep., 598; City of New-
port v. Berry, 80 Ky. Law Rep., 356; Low v. Commonwealth,
3 Met., 241; Hallgren v. Campbell (82 Mich., 255) 24 Am. Stat.
Rep., 557; State v. Wallbridge (119 Mo., 383) 41 Am. Stat. Rep.,
663; State v. Sullivan (58 Ohio Stat., 505) 65 Am. Stat. Rep.,
781; State v. Hewitt (3 S. D., 187) 44 Am. Stat. Rep., 788;
Metsker v. Nealy (14 Kan., 122) 13 Am. Stat. Rep., 269; State
v. Board of President and Directors (134 Mo., 296) 56 Am. Stat.
Rep., 503; Gilman v. Bassett, 33 Conn., 298; Field v. Common-
wealth, 32 Pa., 478; State v. St. Louis, 90 Mo., 19; State v.
Trenton, 50 N. J. L., 338; Denver v. Barrow, 13 Colo., 460; Wil-
lard's App., 4 R. I., 595; Com. v. Southerland, 3 Serg. & R.,
145, People v. Ingham County Treas., 36 Mich., 416; People v.
Jewett, 6 Cal., 291; State v. McGarry, 21 Wis., 496; People v.
Brooklyn Fire Comrs., 7 Cent. Rep., 770, 106 N. Y., 64; Peo-
ple v. Robb, 55 Hun., 425; Dullam v. Willson, 53 Mich., 393;
51 Am. Rep., 128; Riffe v. Tinley, &c., 103 Ky. Rep., 633; O'Dowd
v. Boston, 149 Mass., 443.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

This is an appeal from a judgment of the Fayette circuit
court sustaining a general demurrer to the petition filed in
that court by appellants against the appellees, which con-
tained the following averments: It is alleged: That the ap-
pellant, George Denny, is a citizen and elector of the city of
Lexington, and one of the commissioners of the county board
of election commissioners; that appellant Stanley Milward
is a citizen and elector of the city of Lexington, and candi-
date for the office of sheriff of Fayette county; that appel-
lant G. H. Crosthwaite is a citizen and elector of the city
of Lexington, and candidate for the office of assessor for
Fayette county; that appellant J. Morgan Gentry is a citi-
zen and elector of the city of Lexington, and candidate

for the office of jailer of Fayette county—all to be voted for at the election to be held on the 5th day of November, 1901. That said Stanley Milward, G. II. Crosthwaite and J. Morgan Gentry were duly nominated for the respective offices at the convention of the Republican party held for that purpose. That their nominations were duly certified, as required by law, to the appellee Claude Chinn, clerk of the Fayette county court. That said certificate of nomination was duly accepted by said clerk as sufficient, and duly recorded in his office. That the names of said appellants were placed upon the official ballot under the device of the log cabin, the emblem of the Republican party, and that their names are now printed upon said official ballot. That the board of election commissioners of Fayette county is composed of appellant George Denny and the appellees H. M. Bosworth, sheriff, and C. W. Miller. That on the 20th day of September, 1901, said board of election commissioners met, and appointed, as required by law, from the list of eight names designated in writing by the county executive committees of the Republican and Democratic parties. officers of election in each precinct of Fayette county to act for one year, and until their successors should be appointed and qualified. That subsequently, on the 30th day of September, 1901, said board of election commissioners met, and filled certain vacancies which in the meantime had occurred in the election offices theretofore appointed. That all of said officers appointed by said board at their meeting held September 20th and 30th were and are duly qualified, accepted the office of election to which they were respectively appointed, and acted as the officers of election at the registration held the first Tuesday in October, 1901. That on the 30th day of October, 1901, the defendants H. M. Bosworth and C. W. Miller, over the objection and protest

of the plaintiff Denny, removed all the election officers previously appointed, and appointed others in their stead; and that the persons whom the defendants Bosworth and Miller appointed were not on the list of names furnished to the board by the county committees of the two political parties, and none of the officers so substituted were members of the Republican party, but were all members of the Democratic party. The names of the various voting precincts for which said officers had been appointed and their political affiliations are fully set out in the petition of appellants. That this pretended order removing the regularly appointed election officers for Fayette county was without their knowledge and consent, and without cause as to any of them, except to obtain an unfair advantage for the candidates of the Democratic party, to which appellees belonged. Appellants also make the usual averments necessary for an injunction, and ask that a mandatory injunction issue restraining the pretended officers appointed by appellees from attempting the conduct of the election, and also for a mandatory injunction against appellees Bosworth and Miller, commissioners of the Fayette county board of election commissioners, compelling them to meet with appellant Denny at such time as the court may designate, and set aside and annul all said order made by said board of the 30th of October, 1901, as attempted to remove the election officers who had been previously appointed, and also to require them to make all necessary and proper orders for the reinstatement of the election officers arbitrarily removed by them on the 30th day of October, 1901.

Section 3 of chapter 5 of an act approved on the 24th of October, 1900 (Laws 1900, p. 30), provides: "Said county board shall, annually, not later than September the twentieth, appoint for each election precinct in the county two judges, one clerk, and one sheriff of election, to act as

.such in their precincts; all of whom shall be discreet qualified voters of the precinct for which they are appointed, and shall hold their offices for one year and until their successors are appointed and qualified.   The county executive committees of the two political parties having representation on the State board and county boards of election commissioners may, annually, or before the fifteenth of September, designate in writing for each precinct a list of not less than eight names to the county board of election commissioners: provided, if in any precinct there be not as many as eight electors possessing the qualifications of an election officer belonging to the political party filing said list of names, then a less number may be designated.   And from these names, if any are so designated, the officers of election shall be selected from said lists as follows:   One judge at each voting place shall be selected from each of said lists, and in like manner the sheriff shall be chosen from one of said lists and the clerk from the other.   If no lists are submitted to the said county board, then the officers of election shall be so selected and appointed as that one of the judges at each place of voting shall be of one political party and the other judge of a different political party, and there shall be a like difference at each voting place between the sheriff and clerk of election. No person shall be eligible as an officer of election who has not resided in the precinct for twelve months, next preceding the day of election, or who has committed a homicide, or who has been convicted of a felony or is under indictment therefor, or who is not sober, temperate. discreet and of good demeanor, or who had anything of value wagered on the result of such election, or who is a candidate to be voted for at such election, and who is not capable of reading the Constitution of the Commonwealth in English and of writing a plain and legible hand.   It shall

be the duty of said county board of election commissioners
to determine the qualification of all election officers before
appointment. The county board of election commissioners
shall have the power to remove all election officers who are
thus disqualified under the provisions of this act, but no
such removal shall be made within five days of the elec-
tion; nor shall any such removal be made at any time with-
out cause, and the grounds therefor shall be reduced to writ-
ing by said board and made a part of its records. If a
vacancy shall occur by removal or otherwise, it shall be
filled by the county board of election commissioners from
the list already submitted, if any, from which the officer
was selected, and in conformity to the provisions of this act.
The county Board of election commissioners shall give due
notice of the appointment of election officers to the sheriff
of the county, who shall, before the day of the next ensuing
election and within ten days next after said appointment,
give each officer of election written notice of his appoint-
ment. If there be two or more contending executive com-
mittees of the same party in the county, then that county ex-
ecutive committee which is recognized by the State central
committee, by written certificate of the chairman thereof,
shall be recognized by the county board in making the ap-
pointment of election officers." Taking the averment of the
petition as true, as we must upon demurrer, it is manifest
that the defendants Bosworth and Miller, members of the
county board of election commissioners, violated both the
spirit and letter of the law, which they were appointed to
administer, and which is mandatory to them. The statute
expressly provides that they shall appoint the election
officers not later than the 20th of September, and that,
when so appointed and qualified, they shall hold their places
for one year; that they must be appointed from the lists

designated by the county executive committees of the two
political parties having representation on the State and
county boards of election commissioners, and must be equal-
ly divided between the two political parties, and possess the
qualifications pointed out by the statutes; and, having once
exercised the power of appointment, the county board have
no right or power to remove them, except for some of the
disqualifications pointed out in the act, and then they are re-
quired to reduce to writing the grounds on which they
act, which must be made a part of the record of the board;
and in no event can they remove later than five days pre-
ceding the election. Section 15 of the amendment provides
that: "If any member of either the State board or county
boards of election commissioners, herein provided for, shall
wilfully and knowingly violate any of the provisions of this
act, or fail to execute faithfully any of the duties imposed
upon said boards under the provisions of this act, he shall
be fined not less than $100.00 nor more than $1,000.00, and
imprisoned in the county jail not exceeding sixty days."
It will be observed that the duties imposed upon the county
board of election commissioners by the statute are minis-
terial, limited and specific. The cardinal idea running
through the statute is that, to insure free and fair elections,
each of the two political parties shall have equal repre-
sentation to the officers who are designated to hold the
election. The petition undoubtedly states a good cause of
action against the defendants, and the only question, there-
fore, to be considered is whether the courts have the power
to compel the election commissioners to discharge the duties
imposed upon them by law, and to restrain them from the
commission of acts prohibited by law. Section 477 of the
Civil Code defines the right of mandamus, as treated in
that chapter, as: "An order of court of competent and or-

iginal jurisdiction commanding an executive or ministerial officer to perform an act or omit to do an act, the performance or omission of which is enjoined by law, and is granted on motion of the party aggrieved or the Commonwealth when the public interest is affected." This section of the Code covers fully the law applicable to the facts of this case. The defendants are ministerial officers; they have failed and refused to discharge the plain duty imposed upon them by law; and the plaintiffs, who are candidates and official representatives of the Republican party, have a just ground of complaint for the wilfull and illegal act charged to have been committed by the defendants; and we are of the opinion that the plaintiffs had a clear right to maintain this action, and that the circuit court had full and ample jurisdiction to have granted the relief sought. The acts of the defendants Miller and Bosworth were committed on the 30th day of October, 1901. The election was to have been held on the 5th of November following. Only five days intervened between the action of the board and the day of the election. The only efficient remedy provided by law to restrain the commission of the act complained of was a suit in equity for a mandatory injunction as authorized by the Code. Numerous cases have been decided by this court sustaining this view. See Houston v. Steele, 98 Ky., 596 (17 R., 1149) (34 S. W., 6) ; Weaver v. Toney, 107 Ky., 419 (21 R., 1157) (54 S. W., 732, 50 L. R. A., 105); Berry v. McCullough, 94 Ky., 247, 15 R., 117) 22 S. W., 78; Poyntz v. Shackelford, 107 Ky., 546 (21 R., 1323) (54 S. W., 858). In the last case Judge Hazelrigg, in delivering the opinion of the court, said: "We think that when an officer in the rightful possession of his office is interfered with in the discharge of his official duties, and to the detriment of the public business, this form of action is proper. That was said in the recent case

of Weaver v. Toney, supra." And numerous authorities are referred to in that case to sustain this proposition; among others, 5 Am. & Eng. Dec. Eq., 549. In High, Extr. Rem., section 67, the question is discussed as follows: "We have already seen that the courts refuse to lend their extraordinary aid by mandamus to determine disputed question of title to office, or to compel the admission of a claimant in the first instance, when he has never been in possession of the office or exercise of its franchises. When, however, one has been in the actual and lawful possession and enjoyment of an office from which he has been wrongfully removed, a different case is presented. And mandamus is recognized as a peculiarly appropriate remedy to correct an improper *amotun* from a public office, and to restore to the full enjoyment of his franchise a person who has been wrongfully deprived of his office by the illegal appointment of another. The writ will lie to compel the restoration, even though the person appointed in his stead be in possession *de facto*. So, under a statute providing that the writ of mandamus may issue to restore one to any office to which he is entitled, and from which he is unlawfully excluded, the writ will go to compel the restoration to a public school of a teacher who has been improperly removed therefrom, even though another incumbent has been appointed in his stead, when such teachers are entitled by statute to retain their position while they continue to be competent and faithful in the discharge of their duties." In 19 Am. & Eng. Ency. Law (2d Ed.), 737, it is said: "Where the law has limited the discretion of a board or officer, mandamus may issue to keep such board or officer within the limits of such discretion; and, if the facts are admitted or clearly proven, mandamus will issue to compel action according to the law, if the duty involved is purely ministe-

rial, and not judicial or discretionary; and if the duty itself is imperative, specific and defined, mandamus will lie not only to compel general performance, but to compel performance in a particular and specific manner." And to the same effect are the cases cited in City of Newport v. Berry, 80 Ky., 354 (4 R., 185) Lowe v. Com., 3 Metc., 241; Page v. Hardin, 8 B. Mon., 648; *Ex parte* Lennon, 166 U. S., 548, 17 Sup. Ct., 658, 41 L. Ed., 1110.

For reasons indicated, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.