Matter of the Application of JAMES J. KEHOE, to Review
the Determination and Act of the Board of Elections of the
City of New York.

(Supreme Court, Queens Special Term, October, 1904.)

Nomination for the office of State Senator — It may, where the regular
   convention fails to act, be made by a joint meeting called by the
   chairman of the general county committee.

   Where a party convention regularly called under the provisions
   of the Primary Law fails, owing to a deadlock, to nominate a
   candidate for the office of State Senator, the chairman of the
   county general committee of the party, pursuant to a rule or regu-
   lation adopted to provide for the contingency- of a primary con-
   vention having failed to act, may call a joint meeting of the
   members of the county general committee of the assembly districts
   comprising the district affected, and of the executive committee
   of the general county committee, and this joint meeting may nomi-
   nate a candidate for the office.

APPLICATION of petitioner to review the determination
and act of the board of elections of the city of New York, in
refusing to receive and file his certificate of nomination as a
candidate for Senator, and to place his name in the official
ballot.

Luke D. Stapleton, for motion.

William N. Cohen, opposed.

KELLY, J.  On October 22, 1904, in the afternoon, James
J. Kehoe, the petitioner in this proceeding, presented a peti-
tion to me under section 56 of the Election Law of this State,
in which he alleged that the board of elections of the city of
New York had wrongfully refused to receive and file his cer-
tificate of nomination as a candidate for the fifth senatorial
district of Kings county, and to place his name upon the
official ballot.  He applied to me as a justice of the Supreme
Court within the second judicial district, as the Legislature

apparently had authorized him to do. Whatever views I may entertain as to the propriety of vesting the review of the actions of the board of elections in a justice of the Supreme Court, whatever may be my personal wishes as to reviewing such action, I conceive that there is no greater duty imposed on a judicial officer, under the law as it is laid down by the Legislature, than to act in a case where a citizen claims to have been aggrieved by the action of a subordinate tribunal. It is not a matter of choice, whatever my own wishes might be, especially at this time when I am occupied here to the full limit of the opportunities given me to transact judicial business. But here is a citizen, resident in the borough of Brooklyn, where I reside, resident in the county of Kings, where I reside, who comes to me complaining that his rights have been violated and that the Legislature has authorized a justice of this court to give him relief and to summon the persons whom he claims have wronged him, for the purpose of reviewing their action. I cannot see that the dignity of this court is in any way assailed or interfered with by a judge of the court complying with the command of the Legislature. On the contrary, my view is that the dignity of the Supreme Court is best maintained by a justice of the court acting for the relief of the citizen in any case where his rights are involved or interfered with. I conceive that is the duty of a justice of this court; and while I have at heart the dignity of this court to the fullest extent, I think that I am best conserving the dignity of this great court by acting on the petition of any citizen who claims that he has been wronged, no matter what his party affiliations may be, no matter what the particular case may be. If the Legislature has said that he is entitled to a review, I think the dignity of the court is best preserved by a justice acting on such an application. Now, the objection which has been argued against this certificate of nomination is based on the fact that the nomination of Mr. Kehoe was not made by the senatorial district convention which was summoned under the provisions of the Election Law to nominate candidates for that office. It appears that this convention regularly called under the provisions of law failed to nominate owing to a deadlock; that the dele-

gates having been in session during the entire night and unable to organize — unable to elect a presiding officer — one-half of the convention withdrew, the remaining one-half going through the form of nominating the petitioner here, Mr. Kehoe, as the candidate of the Democratic party for Senator in this district. That nomination being considered irregular, no further action appears to have been taken by the convention, called under the provisions of the Primary Law, and the time to file nominations being about to expire, the general committee of the Democratic party, in this instance in Kings county, assumed to act under a rule or regulation which they had adopted to provide for the contingency of a primary convention failing to act. It appears that this general committee adopted a rule pursuant to the provisions of the Primary Law — that is which they claim to be pursuant to that law, to wit, this provision, section 4 of article 8 of the laws for the organization and government of the Democratic party of Kings county. That section provides that whenever a senatorial convention called under the authority of the county general committee fails to make a nomination within two days prior to the time fixed by law to file nominations, the chairman of the county general committee shall call a joint meeting of the members of the county general committee of the assembly district, comprising the districts affected and the executive committee of the general committee, a majority of both shall constitute a quorum to make such nomination as the convention failed to make, and a majority of such quorum shall be sufficient to nominate. The senatorial convention called under the authority of the county general committee having failed to make a nomination, the county general committee proceeded to act under this section of article 8 and the certificate of nomination of the petitioner here which has been rejected by the board of elections is the result of that action. No criticism appears to have been made, no objection appears to have been filed with the board of elections to that certificate, except by Mr. Hanbury, mentioned in the moving papers here. There is no other nomination by the Democratic party or any faction thereof, and if the action of the board of elections

is to be sustained, the electors, citizens of the fifth assembly district who are desirous of voting for a Democratic candidate for Senator under the party emblem, which right as I understand it has been determined by the courts in other cases to be a valuable and important right, are deprived of that right to vote, they can only exercise the franchise by the method of writing the name of their candidate on the official ballot, a difficulty which has been commented on by the courts in previous cases, a method which the Legislature with the intent of furthering the honesty of elections had the right to prescribe; but the court cannot shut its eyes to the fact that such a requirement in this community is apt to nullify the intentions of individual voters. In many instances the electorate is made up under our system of laws of those who can write and those who cannot write. There is no educational or property qualification for voters, and it was to simplify the act of voting that the emblem was provided for by the Legislature, and to relegate a voter to the method of writing in the name of his candidate is to seriously interfere with the facilities for voting. So that the result to the voters in that district who may desire to vote for the Democratic candidate, if this action is, to be affirmed, is serious. No one is before me, sitting as a judge of the court, complaining that he is a candidate for this office, or that he has been nominated by this party or a faction of the party for the office. It is charged in the moving papers here that the only objection to this certificate comes from a member of another party. It may be that under the Primary Law and under the Election Law this gentlemen has a right to interfere. That is not the question here. The question is whether voters are without remedy in this condition of affairs. The voter does not derive his right to vote from the Election Law. The Legislature does not give a man the right to vote; he has that right under the Constitution of this State, and it must not be interfered with. The Election Law is intended to provide for honesty in elections, for the proper conduct of elections. The Primary Law is intended to provide for honesty in nominations, for regularity in nominations, but it is not to be construed so as to deprive the voter of his right to vote.

This court and the Appellate Division of this court so hold in the case of Norton who was a candidate for Senator in this district, where Mr. Justice Hatch reiterated the rule, which has been so often announced, that the object of the court in interpreting the law should be to further in every proper and honest way the right of the individual to exercise the franchise. Now, did this general committee, this county committee, have the right to nominate under the conditions that prevailed here, there being no other nomination and the election going by default unless they intervened? They have on their books, on their records, rules and regulations. The Primary Law provides that they may enact rules and regulations. The fact that the general committee of a party in a county is authorized to enact regulations for the government of the party, and on the direction of party affairs, is found by reference all through this law (chapter 473 of the laws of 1899). Having made a law providing that if the delegates to the convention fail to act that the party shall still have an opportunity to present a candidate under the party emblem, it does seem to me that the court in interpreting these two statutes should endeavor to further the right of either party to, put in nomination a candidate, that no interpretation should be given to this statute which will lead to an election by default, so that one of the great parties in this State shall be deprived of any candidate at all. That cannot be the intention of the law. This rule and regulation appears to me to be reasonable. It does not appear to be contrary to the Election Law, but in furtherance of the law and its provisions. If it were necessary, which I doubt, I would hold that this county committee is a convention, that it is an assemblage of delegates representing a political party, that in the event that the regular convention does not nominate and that the electors are to be deprived of their right to vote for a party candidate, then that this rule and regulation being reasonable, that it is a convention duly convened for the purpose of nominating candidates for office, and that their action under this condition of affairs disclosed here was legal. The fact that the court, or the fact that I, sitting as a judge

of the court, am obliged to render a decision promptly in this matter prevents me from giving it the examination that I would desire to give it, but I am very clear that it is my duty to act in the matter. When this application was made to me Saturday, it was important to entertain it, and having entertained it, it is my duty to hear and determine it. There can be no interpretation of these statutes which will justify the action which has been taken here. I think it is contrary to the intention of the Legislature of this State, contrary to the provisions of the Constitution. I think all the parties should have a free right to nominate candidates, and that no nomination should be allowed to go by default in this State; and that here where there is no other nomination, no member of the party, no voter enrolled under the Primary Election Law as a member of the party in question coming and complaining of the conditions, that it is the duty of the court to reverse the action of the board of elections of the city of New York and direct that the name of the petitioner be inserted on the official ballot.

Mr. Cohen: May I file with your honor an affidavit as part of the proceedings and I give notice that we shall appeal from your honor's decision. May we have a stay pending the appeal?

The Court: I do not think under the provisions here that I should grant a stay. What sort of stay do you want?

Mr. Cohen: So that I can go to the Appellate Division.

The Court: I think it better in the interests of all parties that the board of elections should obey this order and then if I am wrong the name can be taken off the ballot, whereas, if I do not order it on the ballot complications may arise which may affect the validity of this man's election and the validity of his action in the Legislature if that ever becomes important.

Ordered accordingly.

NOTE.— This decision was unanimously affirmed by the Appellate Division, Second Department, 97 App. Div. 637. — REP.