Case 48.—PROSECUTION AGAINST H. C. COMBS, COUNTY CLERK, FOR KNOWINGLY AND WILFULLY FAILING AND REFUSING TO HAVE A NOMINEE PLACED ON THE OFFICIAL BALLOT.—April 25.

# Commonwealth v. Combs.

Appeal from Owsley Circuit Court.

H. C. FAULKNER, Circuit Judge.

From an instruction of the court to find the defendant not guilty the Commonwealth appeals. Reversed. Opinion certified.

Primary Election—Fraud—Remedy—Failure to Furnish Ballots— Missing Precinct—Certificate — Circuit Clerk — Jurisdiction— Injunction—Indictment—County Clerk—Placing Nominees on Ballot—Duty—Refusal—Collusion—Good Faith—Question for Jury.

1. Primary Election—Fraud—Party Injured—Remedy—The remedy

of one claiming a nomination by a party of which he is be-
ing deprived, is to appeal to the authorities of his party
and not to the clerks of the county courts, nor to the courts.

2. Missing Precinct—Failure to Furnish Ballots—Certificate—
County Clerk—Though it be conceded that a primary elec-
tion was void in which one precinct of the county was de-
prived of an opportunity to vote by not having ballots fur-
nished it, and if it be further conceded that there was no
authority for completing the election in the missing pre-
cinct on a subsequent day these facts are matters which per-
tain to the duty of the party governing authority, and lie
back of his certificate of nominations.  When the certifi-
cate is filed substantially in the form and manner prescribed
by the statute it is not within the province of the county
clerk to go behind it.

3. Circuit  Court—Jurisdiction—Granting  Injunction—While  the
clerk of the circuit court may, in the absence of the circuit
judge from the county, grant a preliminary, restraining order,
without notice, upon a showing that irreparable injury would
be sustained by the party moving, before he could give notice,
such clerk has no jurisdiction in any event to grant a man-
datory injunction.

4. County Clerk—Indictment—Placing Nominees on Ballot—Duty—
Refusal—Collusion—Good Faith—Question for Jury—In an
indictment against a county clerk for knowingly and wil-
fully refusing and failing to have the names of certain nomi-
nees printed upon the official ballot in the manner provided
by the election law of this State, if his refusal was in obe-
dience to an order of injunction made by the circuit clerk,
and in an honest belief that such order was valid, then his
omission was not wilfull, but if the proceedings for the in-
junction were not begun in good faith, but were the result
of a collusion between the defendant and any other persons
to wrongfully deprive the nominees of their legal right to
have their names appear on the ballots as such nominees,
then he could not justify his official action by his fraudulent
conduct, and in such cases the question of the good faith
of the defendant should have been submitted to the jury.

N. B. HAYS, Attorney General, and JNO. C. EVERSOLE for
appellant.

In the case at bar the appellee, H. C. Combs, the county clerk
of Owsley county, was indicted in the Owsley Circuit Court, at
its May term, 1903, charged with the crime of wilfully and know-

ingly refusing and failing to have the name of a candidate, printed upon the official election ballot.

1. It will be noticed that the court would not allow the Commonwealth to prove that appellee was a candidate for county court clerk at the November election 1901.

2. Nor would the court allow the Commonwealth to prove that H. C. Combs, appellee, was the same H. C. Combs, one of the plaintiffs in the case of W. J. Wilder, D. G. Wilson and H. C. Combs against L. F. Cole, J. T. Mainous, H. M. Herd and H. C. Combs, clerk; nor would the court allow the records of that case in evidence; nor would the court allow proof that H. C. Combs was a candidate in the primary, and the result; nor would the court allow the fact proven that Combs had a petition filed to get on the ballot, or how he got his name on the ballot; nor would the court allow proof that A. C. Hyden, H. C. Combs, D. G. Wilson were all canvassing in the county and denouncing the committee and the primary, and requesting the people to vote for them regardless of the fact that the other parties held certificates of nomination.

3. The court also rejected proof of the fact as to how Combs had the diagram of the ballot, and where all of the independent candidates were on that diagram, on October 21st, 1901, and refused to allow the Commonwealth to prove that these suits were filed between the time appellee showed this diagram and the time he saw witness immediately after the filing of these suits.

4. It is insisted by appellant that all of this proof was competent, for the purpose of showing the common interest and purpose of appellee, A. C. Hyden, D. G. Wilson and W. J. Wilder in suing out these various restraining orders, restraining appellee, as clerk, from having printed on the election ballot the name of their opponents as the nominees of the Republican party, for said offices, and instead thereof having printed the names of appellee and his co-conspirators, A. C. Hyden, D. G. Wilson and W. J. Wilder, and also A. M. Neeley, sheriff.

5. We think that the facts in this case failed to show that the appellee was acting in good faith, in obedience to the restraining orders heretofore mentioned in this case, but that said orders were simply used as a shift and device, therefore, we insist that the trial court erred in instructing the jury to find the defendant not guilty, and that in doing so he laid down a precedent if upheld by this court will enable the county court clerk and designing persons to control an election their way by the use of restraining orders, a precedent that strikes at the very foundation of civil liberty.

Commonwealth v. Combs.

AUTHORITIES CITED.

Ky. Stats., sec. 1591; Adams v. Roberts, 26 Ky. Law Rep., 1272.
(No brief for appellee.)

OPINION BY JUDGE O'REAR—Certifying opinion.

The governing committee of the Republican party
of Owsley county ordered a primary election to se-
lect candidates of that party for the various county
offices to be voted at the November election, 1901.
The election was held, but, owing to some mishap,
the ballots prepared for one precinct were not
provided, or were not delivered, so that the
voters of that precinct did not get to vote in that
primary. The election proceeded in the other pre-
cincts. The result showed that A. C. Hyden had
received the highest number of the votes cast as the
nominee for county judge. He was then the county
judge of that county, and was a candidate for re-elec-
tion. Others were likewise nominated for other offices.
Upon its being discovered that the missing precinct
had not had a chance to vote, the county committee
called all the candidates to meet it at Booneville, the
county seat, when it was agreed that on the follow-
ing Saturday the election should be continued in the
missing precinct, and that the result there should
be added to the total of votes cast in the other pre-
cincts, and that the final result was to be so ascer-
tained as if all the precincts had voted upon the same
day. The election was continued accordingly, with
the result that Hyden was defeated upon the face of
the returns. The committee thereafter met, and can-
vassed the returns, and certified to the county court
clerk, as required by law, the nominations for the
various offices, including that of county judge;
Hyden's opponent being certified as the nominee.

This certificate was filed not more than 60 and not less than 15 days before the ensuing regular election, as required by the statute. Notwithstanding Hyden and the others who had received apparent majorities without the missing precinct, continued to claim their nominations, and declared that the election held in the missing precinct was void. Appellee, H. C. Combs, was at that time the county court clerk of Owsley county, and was a candidate before the primary for nomination for re-election. In the election as first held he had received an apparent majority, but with the votes of the missing precinct he was defeated. His successful opponent was certified by the chairman and secretary of the county committee as the nominee of the party for county court clerk. The nominee for county judge as certified to by the county committee resigned his nomination in the manner provided for by the statute. The county committee then called a mass convention to nominate a candidate for that office. The convention met, and nominated W. T. McGuire, which fact was duly certified to the county court clerk. A few days before the regular election a suit was filed by all the candidates who had received apparent majorities in the first day's voting in the primary against their successful opponents in the result of the two days' voting, seeking an injunction restraining the county court clerk from placing the latter's names on the ballot as the nominees and under the title and device of the Republican party, and commanding the clerk to place the plaintiffs' names on the ballot as such nominees. The county court clerk was made a party defendant (as well as a party plaintiff) to this action. A similar suit was filed by Hyden against McGuire and appellee, the county court clerk, regarding the arrangement of the ballot in the county

judge's race.  In the first named suit a restraining order was issued by the county judge, Hyden, which was also a mandatory injunction to the clerk to place the names of the plaintiffs on the ballots as such nominees, instead of defendants'.  In Hyden's suit against McGuire a similar injunction and restraining order was granted, and issued by the circuit court clerk.  These orders were granted without notice to the defendants, and before they had been summoned in the actions.  Appellee, though, seems to have had personal knowledge of the fact.  Indeed, he was one of the plaintiffs who procured the order to issue as to all the offices except that of county judge. McGuire heard rumors of the proceedings just before the election, and went to the circuit court clerk's office to verify them.  He was there told that no such suit could be found, and nothing was there to show that any such had been filed.  Not satisfied, he went to the sheriff to learn whether he had any process against him, and found that he had.  Returning to the clerk's office with a copy of the summons and restraining order, the papers of the suit were produced to him.  Notices were immediately given that the defendants in the suits would apply to the Honorable S. B. Dishman, circuit judge of the district at Manchester, on the following day—which was the Saturday before the day of the regular election—to dissolve the injunction and restraining order.  The motion was made accordingly, and the restraining order and injunction were dissolved.  By the time the parties could return to Boonville and get into the clerk's office to file the judge's order dissolving the injunction it was Monday morning, the day before the election.  McGuire and his associates then furnished to appellee pasters upon which their names had been printed, to be attached to the ballots in the

appropriate places, placing them on the ballots as nominees of their party for the various offices to which they had been nominated as certified to by the county committee. Thereupon, the plaintiffs in the suits mentioned got out another injunction, similarly issued, restraining the clerk from using the pasters. The clerk refused to use them, and refused and failed to have McGuire's name placed on the ballots as the nominee of the Republican party for county judge, or placed on the ballots at all. He also refused to have any other parties' names as certified by the county committee placed on the ballots at all. It was then too late to do anything else in the way of legal proceedings to correct the ballot. There was not a printing office in the county capable of printing the ballots, so the clerk had them printed elsewhere. Boonville is about 12 miles from the nearest railroad station. The grand jury of Owsley county indicted appellee for knowingly and wilfully refusing and failing to have the name of W. T. McGuire printed upon the official ballot in the manner provided for by the election law of this State. Upon the trial there was evidence of intentional action of appellee to do what he did do to prevent the election of McGuire and his associate nominees. But appellee justified his act under the order of the circuit court issued by its clerk in the suit of Hyden against McGuire, restraining him from placing the name of McGuire on the ballot as such nominee, and that after the restraining order was dissolved it was physically impossible, under the existing conditions, for him to then have had other ballots printed. The circuit court seems to have come to the conclusion that this defense was good, and consequently instructed the jury to find the defendant not guilty. The Commonwealth has prose-

cuted this appeal that the law governing similar acts
may be declared.

The Australian system of voting by secret ballot
has come into use in this State only within the last
few years. The Constitution of 1891 for the first
time provided that elections should be by secret bal-
lot. The laws enacted from time to time since by
the Legislature to carry into effect the constitutional
requirement have been found not entirely adequate
to prevent frauds. To cure the defects, actual or
supposed, the Legislature has adopted numerous
amendments, in some instances amounting to almost
complete revisions. Throughout all these efforts to
perfect the law this main idea has been kept prom-
inent; to insure an absolutely fair, untrammelled ex-
pression of the choice of the legal voters. It is real-
ized that unless this fountain of all power and gov-
ernment under the American system is preserved
from the control of fraud, the State is imperiled,
and government by the people will be impossible.
For government by fraud is the basest of social ex-
istence, and is utterly inconsistent with the idea of
government by popular will. The machinery neces-
sary for conducting elections has been found more
or less cumbersome, because of the intricacy required
to prevent all manner of frauds—to make them, as
far as practicable, impossible in the first instance.
For it is realized that if fraud can triumph at first,
so as to get hold of the functions of government,
it would be more difficult to right it, to the extent
that its agents or recipients were to execute the laws
to punish it. Therefore, the prevention, in prefer-
ence to the punishment, of frauds, has been sought
with a diligence indicated by the extreme care ex-
acted of all officers in holding elections. The voter
can vote only by using the official ballot. (Sec. 1446,

Ky. Stats., 1903.)    The ballot is furnished by pub-
lic authority, so that it can be certainly authenti-
cated, and so as to prevent substitution.    It is not
intended that the voter should be hampered at all,
but that he may be afforded the simplest, easiest,
and freest method of indicating his will concerning
the persons or matters to be voted for.    In this
country the fact is that final selections of public of-
ficials are more frequently made through party than
through individual choice.    Yet this is not always so.
Consequently provision is made for indicating the
individual choice if it should not be the voter's party
choice.    The fact of party affiliation is so well estab-
lished and recognized that the Legislatures of many
of the States, and particularly of this State, have
brought party elections, called "primary elections,"
by which the nominees of a party are chosen, under
the surveillance and protection of the law.    For, if
party nominations could be made irrespective of the
fair expression of the will of its members, it would
frequently result, after all, that fraud was actually
controlling the selection of public officials.    A party
or primary election has, since the enactment of the
present statutes on the subject, ceased to be solely
a matter of party concern.    It is one of which the
law takes cognizance.    It must be conducted under
the statute (Brown v. Republican County Executive
Committee, 119 Ky., 720, 68 S. W., 622, 23 Ky. Law
Rep., 2421; Young v. Beckham, 115 Ky., 246, 72 S.
W., 1092, 24 Ky. Law Rep., 2135), and its officers
are officers of the State, though appointed by the
party authorities.    (Neal v. Young, 75 S. W., 1082,
25 Ky. Law Rep., 185; Eagan v. Gerwe, 112 Ky.,
232, 65 S. W., 437, 23 Ky. Law Rep., 1496;Young
v. Beckham, supra, sec. 1560, Ky. Stats., 1903.)    When
the result is ascertained in the manner provided by

the statute, it gives to the nominees and to that party legal rights which all others must respect, and which the courts will enforce. (Neal v. Young, 75 S. W., 1082, 25 Ky. Law Rep., 185.) As the official ballot alone can be used, it becomes apparent from the foregoing statements wherein a party nomination to an office is a matter of more than merely party or personal concern. It is one in which the public are also interested. Choice must generally be exercised by the voters at the regular election between party nominees to be effectual, for, except a considerable number should join in a petition for the purpose, no other name can be printed on the ballots than such nominees. Besides, conditions might arise too late to admit of the voter's taking that course to bring about the defeat of an undeserving and undesirable candidate already entitled to have his name placed on the ballot. Contests can arise, and do arise, over the title to a party nomination. Formerly, rival claims of this character, when made to the county court clerk, the official who prepares the ballots for county offices, were decided by him without appeal. This led to abuse, because it occasionally happened that from political or personal interest this officer, to defeat the real choice of the party, placed the one not entitled to it under the party device as its nominee. To obviate that, the Legislature has taken from this official all discretion in such matters. If there is a contest or dispute over a party nomination, the governing authorities of that party are given exclusive jurisdiction to determine it. (Secs. 1563, 1460, Ky. Stats., 1903; Moody v. Trimble, 58 S. W., 504, 109 Ky., 139, 22 Ky. Law Rep., 692, 50 L. R. A., 810.) The remedy of one claiming a nomination by a party, of which he is being deprived, is to appeal to the authorities of

his party, and not to the clerks of the county courts, nor to the courts. Such was the state of the law in 1901, when the acts charged in this indictment are alleged to have been committed.

Though it be conceded that an election was void in which one precinct of the county was deprived of an opportunity to vote by not having ballots furnished to it (Hocker v. Pendleton, 100 Ky., 726, 19 Ky. Law Rep., 135, 39 S. W., 250), and if it be further conceded that there was no authority for completing the election in the missing precinct on a subsequent day, those facts are matters which pertain to the duty of the party governing authority, and lie back of its certificate of nomination. When the certificate is filed substantially in the form and manner prescribed by the statutes, it is not within the province of the county court clerk to go behind it to determine whether it was rightfully done. (Hollon v. Center, 102 Ky., 119, 19 Ky. Law Rep., 1134, 43 S. W., 174; Wilkins v. Duffy, 70 S. W., 668, 24 Ky. Law Rep., 913, 968.) No party nomination could be safe if that were so. We do not decide that a fraudulent certification by a party authority, though in the form prescribed by statute, is not impeachable. We only go so far here as to say that the county court clerk and other election officers can not collaterally impeach or ignore it. Until it is set aside by the governing authority of the party, as permitted by the statute (secs. 1563, 1460, Ky. Stats., 1903), or by a court of competent jurisdiction, officers of election can not question it. It follows that the nomination of McGuire, being the only one certified to appellee, as county court clerk, as the nominee of the Republican party for the office of county judge of Owsley county, it was the duty of appellee to have recognized it alone, unless its validity was impeached in

one of the manners above indicated.  It is claimed
this was done by the order of injunction issued by
the circuit court clerk of Owsley county in the suit
of Hyden against McGuire, which is in the follow-
ing language: "Owsley Circuit Court. A. C. Hyden,
plaintiff v. W. T. McGuire and H. C. Combs, defend-
ants.    Order restraining.    The Commonwealth of
Kentucky to W. T. McGuire and H. C. Combs: You
are hereby restrained from certifying or causing to
be printed upon the official ballots under the device
of the Republican party, which device is the log
cabin, the name of W. T. McGuire as a candidate
for the office of judge of the Owsley County court,
to be voted for at the November election, 1901, in
Owsley county; and you are further restrained from
certifying or causing to be printed upon said bal-
lots the name of A. C. Hyden under any other de-
vice, than that of the log cabin, the Republican de-
vice, which he is entitled to as a candidate for county
judge of said county at said election.    Witness R. L.
Rose, clerk of the Owsley Circuit Court, this October
24th, 1901.  R. L. Rose, Clk. O. C. C." The Owsley
Circuit Court is a court of general jurisdiction sit-
ting in Owsley county.    Its judgments and orders
concerning the subject-matter embraced in the suit
of Hyden against McGuire are conclusive upon par-
ties and privies, and may be and should be obeyed
till reversed, modified, or vacated, provided the court
had got the jurisdiction of the case and parties when
the order was issued.    The Civil Code of Practice
regulating the granting and issual of injunctions
(sec. 276) provides that preliminary restraining or-
ders may be granted without notice, upon a show-
ing that irreparable injury would be sustained by
the party moving before he could give notice.    This
order may be granted and issued by the clerk of the

court or the county judge provided the circuit judge
is absent from the county. But the clerk has no
jurisdiction in any event to grant a mandatory in-
junction. That can be done alone by the court or
by a circuit judge. (Sec. 273, Civ. Code Prac.) So
much of the order quoted above as is mandatory in
its terms was void on its face.

McGuire's nomination had been certified several
days before the suit was brought to enjoin the clerk
from putting it on the ballot as a nominee of his
party. His nomination, under which he was asserting
title to the party emblem and position on the ticket,
had taken place nearly a year previous. The elec-
tion was to occur on November 5th. The petition
seeking the injunction was filed October 24th. The
petition says that the plaintiff learned on October
21st that McGuire's name had been certified as the
nominee of the Republican party for county judge.
It claimed that "unless an injunction was immedi-
ately granted and issued, irreparable injury would
result at once to him." Notice of the application
for the injunction was not given. It was a notori-
ous fact, and was doubtless known to all the parties,
that the ballots for the regular November election
would have to be printed elsewhere than in Owsley
county; that it would take several days, in any event,
to get them printed and returned so as to have them
at the various voting places on the morning of the
election; that, if the order for a change or reprint-
ing of ballots was not placed with the printer by
the 1st of November anyhow, it would mean that it
would then be useless to do so; it would be too late.
The restraining order, so called, issued on October
24th, which forbade the county clerk from putting
McGuire's name on the ballots as the nominee of
the Republican party for county judge, was served

on appellee on October 24th, just in time, it seems, to allow him to have the ballots printed so as to get them distributed for the election. But it was not served on MuGuire till November 1st, too late, in any event, to admit of his having it acted on in time by a circuit judge so as to correct its mischief, if found to have been improvidently issued. It was, therefore, in its nature and effect, final in every sense. It granted in fact, as it indeed, purported to upon its face, final and complete relief in the action. A ministerial officer, without notice, without hearing, without trial, in vacation, proceeded to render judgment, final in its nature, forever depriving a man of a substantial legal right. No subsequent reversal of his action would avail. No other trial could ever remedy the evil done. It would seem that authority was not needed to brand such a proceeding as void—as not binding on anybody. Yet we have a case at hand so clearly applicable and so conclusive that we cite it, as it seems to have escaped the attention to which it was entitled. In Weaver, Mayor v. Toney, Judge, 107 Ky., 419, 21 Ky. Law Rep., 1157, 54 S. W., 732, 50 L. R. A., 105, a circuit judge granted a "temporary injunction" without notice, enjoining an act concerning duties of election officers, the effect of which was to grant all the relief that could ever be had in the case. This court held the action of the circuit judge and the order of injunction to be void. In speaking of that proceeding, the court, per Chief Justice Hazelrigg, said: "The order is not a mere temporary restraining order, mandatory in its nature. The relief sought and granted is the whole relief obtainable. When the order is obeyed, the end of the litigation is reached. There is no mere temporary stay with reservation of the right of parties till they can be heard. * * * If we attempt to apply the Code provisions to a case where

the act commanded to be done is not of a mere temporary matter, but is practically a finality, and the sum total of the relief sought by the applicant, we must appreciate at once the inapplicability of the section. * * * This so-called temporary restraining order is, in substance, imperatively mandatory, and we must look at the substance, and not the shadow of things." The court in that case also passed upon the question whether the naked averment in the petition that the plaintiff would suffer irreparable injury unless the restraining order was immediately granted was sufficient to dispense with notice. It was found that the plaintiff knew of the alleged threatened danger on the day before he applied for the injunction. The court, in passing upon whether notice was indispensable under those circumstances, said: "In the case at hand the applicant for an injunction at a date when there was apparently still ample time to give the reasonable notice required by the law is found saying that he is in possession of facts which cause him to believe that he will be irreparably injured from the delay of giving notice. If there was in fact not time to give the notice on the 6th, the petition ought to have disclosed the fact. It is not, therefore, a case where notice can be dispensed with, but, on the contrary, it is a case where the face of the application shows that notice was demanded by the very terms of the statute, and where, therefore, the court was without statutory authority to issue the writ except after notice. * * * Where the order is final in its character, the question becomes in a measure, a jurisdictional one." In the suit of Hyden v. McGuire the plaintiff had from October 21st to October 24th to have given notice to his adversary litigants—a fact disclosed on the face of the petition. Furthermore, the petition did not

disclose such an emergency as could have dispensed with notice. In that state of case, action by the officer, in the absence of notice, was void for want of jurisdiction. This rule is not new. The authorities are abundant, many of which are collated and cited in Weaver v. Toney, supra. If it be thought that this rule leaves officers executing injunctions in jeopardy, a sufficient response is that, as the decisions of the courts defining the officers' duties in such matters are of public notoriety, and accessible to them, constituting in part the law which they must take notice of, and which it is ·presumed they do know, they need not be imperiled. The writ of injunction is a harsh one. When employed except as final process, it involves necessarily the prejudging of the case to some extent—the anticipation of the result, based upon evidence of what would probably be shown later on. If it does more than maintain a status, which may be speedily looked into after full opportunity of the parties to be heard, but in fact gives final judgment in the matter, settling rights forever, it is contrary to the spirit of our laws, which, since the Great Charter, forbid that a man should be deprived of his property or liberty save "by the law of the land," which includes his having his "day in court."

But this matter goes deeper than that. There was evidence tending to show that appellee and the plaintiffs engaged in those suits brought them not in good faith, and not that the courts might redress a right claimed by them and wrongfully withheld by another, but to use the process of the law to do an unlawful act; that is, to prevent in an irregular way those persons' names from appearing on the official ballot that were entitled then to so appear. If appellee obeyed the order in good faith, and in an honest belief that the order of injunction issued in the Hyden-McGuire suit

was valid, and was binding upon him, then he did not wilfully, in the sense meant by the statute, omit McGuire's name from the ballot. On the other hand, if the proceedings in the Hyden-McGuire suit were not begun in good faith, but were the result of a collusion between appellee and any of the plaintiffs to wrongfully deprive the nominees of their legal right to have their names appear on the ballots as such nominees, then appellee could not justify his official action by his fraudulent conduct.

The statute under which the indictment was returned in this case reads: "If the county court clerk shall wilfully and knowingly refuse or fail to have the name of any candidate printed on the official ballot in the manner provided for in this act, he shall forfeit his office and be guilty of a felony, and upon conviction, be confined in the penitentiary not less than one or more than five years." (Section 1457a, Ky. Stats., 1903.) Section 1591, Ky. Stats., 1903, reads: "This chapter shall be liberally construed, so as to prevent any evasion of its prohibitions and penalties by shift or device." * * * If it were permitted to an officer of an election to join with others in an undertaking to violate the election law, and do by a misuse of the process of the courts what the statute positively prohibited as a high crime, then it were possible always to violate the statute, and to escape its punishment, too. Judgments and orders of courts of general jurisdiction are entitled to great consideration, as being binding upon all persons connected with the record. But if the judgment has been procured by fraud in order to perpetrate a crime, then it will not be a shield for those who brought it into being for the unlawful purpose. We are, therefore, of opinion that the court

erred in giving the jury peremptory instruction to find the defendant not guilty.

This opinion is directed to be certified to the lower court.