# O'Neil v. O'Connell, Secretary of State, et al.

Oct. 19, 1945.

Prichard & Ardery for appellant.

Eldon S. Dummit, Attorney General, M. J. Sternberg, Assistant Attorney General, and William Wallace for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The courts have been called upon to resolve an inter-party contest for the Republican nomination for the office of Commonwealth's Attorney in the Thirty-Eighth Judicial District, to be voted on at the coming November election. Honorable A. J. Bratcher, who had been nominated in the late primary, resigned the nomination upon his appointment as Judge of the District. Kentucky Revised Statutes 119.020 (3), prescribes that when such vacancy occurs, "the governing authority of the party may provide for filling the vacancy." The certificate of the nomination shall be filed as one made at a primary election. In this instance it was with the Secretary of State. KRS 119.080. The District Committee of the Republican party, consisting of the men and women chairmen of the several county executive committees of Butler, Edmonson, Muhlenberg and Ohio Counties, which compose the judicial district, took 21 ballots upon the nomination being sought by Russell O'Neil, of Muhlenberg, and Otto C. Martin, of Ohio County, with a tie between the two remaining unbroken. On the twenty-second ballot the chairman of the committee cast an additional ballot for O'Neil, claiming the right to do so in order to break the deadlock, and declared him to be the nominee. A certificate of his nomination was filed with the Secretary of State. Martin appealed to the State Central Committee of the party. After a hearing, that body ruled that it had jurisdiction of the matter and that the action of the chairman of the district committee in voting twice in attemping to break the tie vote was void. It further ordered that the action of the chairman and secretary of the committee in certifying O'Neil's nomination "to be and is now declared void and invalid." It was resolved by the State Central Committee that since 22 ballots had been taken by the district committee without a choice being made, there was a deadlock, and no nomination having been made by that committee, it was declared that the State Central Committee, as the supreme governing authority, had "jurisdiction, power and authority" to make the nomination. Thereupon, a vote was taken in which 11 ballots were cast for Martin and 6 for O'Neil. Martin was thereupon declared the nominee and the chairman and secretary of the State Central Committee were di-

rected to certify that fact to the Secretary of State, which they did.

O'Neil filed this suit against the Secretary of State and Martin, praying proper injunctive relief to the end that he, the plaintiff, be declared the nominee. The Secretary of State, in answering, set forth the facts and prayed the advice of the court as to which of the two nominees he should certify to the county court clerks as the Republican candidate for the office. Martin's answer, counterclaim and cross-petition was to the end that he be declared the nominee. A stipulation of facts was made, as substantially related above, with the addition of details concerning the regularity of the meeting and the formation of the two political committees, and the filing of some affidavits. A copy of the official rules of the Republican Party of Kentucky and its committees was agreed upon. The Circuit Court declared Martin to be the nominee and granted the appropriate remedy. O'Neil appeals.

The decision of the case turns upon which of the two committees is the "governing authority" of the Republican Party within the intent of the statute under the present circumstances. That is our only concern. It is a question of identity; but of identity according to the organization of the Republican Party.

Political parties are regarded as a necessity in our republican form of government. 29 C. J. S., Elections, sec. 84. The recent tragic and calamitous experiences in and with Germany teach us that the people should have great liberty in forming and conducting political parties, free from governmental interference and control. In this state their existence, organization and committees are recognized throughout our statutes, but no attempt is made to regulate or control their internal affairs and operations. As creations of free men, political parties are privileged to make their own rules and regulations and to establish machinery for making their organizations effective. They have plenary powers as to their government and other affairs in the absence of restrictive statutes, and the courts have no power in the absence of statute conferring jurisdiction to interfere with those operations, unless a legal right has been conferred by previous party action. 18 Am. Jur., Elections, sec. 143; 29 C. J. S., Elections, secs. 84, 85, 87, 88; Com-

monwealth v. Combs, 120 Ky. 368, 86 S. W. 697; Neal
v. Young, Ky., 75 S. W. 1082; Davis v. Hambrick, 109
Ky. 276, 58 S. W. 779, 22 Ky. Law Rep, 815, 51 L. R. A.
671.

The law as to judicial treatment of disputes within
voluntary associations in general applies to political par-
ties. It is a basic doctrine that the courts in solving
such disputes are guided by the highest authority within
such organizations, no fraud or no property right being
involved. 4 Am. Jur., Associations and Clubs, sec. 17.
We hold, as do all the courts so far as we are advised,
that the courts will not determine rights of conflicting
claimants growing out of the government of a political
party. Party differences, like family or church disputes,
should be settled within the organization or by its
dominating authority. Cain v. Page, Ky., 42 S. W. 336;
Davis v. Hambrick, supra; Smith v. Howard, 275 Ky.
165, 120 S. W. 2d 1040. In a different category are cases
where the officers of a party in performing a ministerial
act by virtue of a statute do not conform to it. Smith
v. Howard, supra. And the courts will protect nomina-
tions properly made by a political party and enjoin
revocation. Young v. Beckham, 115 Ky. 246, 72 S. W.
1092; Neal v. Young, Ky., 75 S. W. 1082; Meagher v.
Howell, 171 Ky. 238, 188 S. W. 373.

We look to the organization of the Republican Party
in Kentucky so far as it is pertinent here. The County
Executive Committees, composed of the chairmen of the
precinct committees, are charged with certain responsi-
bilities and given certain privileges. A District Com-
mittee exists as above described for districts which are
composed of more than one county. Except for Con-
gressional District Committees, no duties or responsibili-
ties are described for district committees. The State
Central Committee consists of eight members from the
state at large, and two members from each Congressional
district, and the chairman of such district committee.
The party rules adopted "by virtue of the power and
authority conferred by the Republican Party of Kentucky
in State Convention assembled" declare that subject
to any such convention the State Central Committee
"shall be the supreme governing body of the party in
the state." Among other things it has "immediate
charge and full control of the political affairs and sub-
ordinate organizations" of the party in the state. It is

authorized to "adopt such measures as may best promote the success of the Republican Party and the election of its nominees." It is expressly provided that this committee is empowered to create or to abolish existing committees "and make such rules for the organization and government of the Republican Party as are in its judgment necessary to the best interests of the party." Also, that "any ruling by a subordinate committee which affects the party interests or the rights of any candidate for nomination, or the right of any person to hold any place in the party organization shall be subject to appeal." Controversies arising in lesser governmental units are appealed first to intermediate committees. It is then provided: "A ruling of any subordinate committee or Congressional district committee that affects the party's interest may be appealed to the State Central Committee. The decision of the State Central Committee shall be final and binding on all questions, and said committee may order any appeal which lies to a subordinate committee or chairman to be taken directly to the State Central Committee."

It is noted that KRS 118.200, in prescribing the method of filling vacancies occurring after the ballots for the regular election have been printed, provides that in such a case it shall be by "the chairman of the state, district or county political organization." It is a logical construction of KRS 119.020(3) that the "governing authority," to whom is granted the privilege of filling a vacancy before the ballots have been printed, means a district political organization where a district office is involved. Meagher v. Howell, 171 Ky. 238, 188 S. W. 373. See also KRS 118.090 referring to a "governing authority" as including a district committee. There is no quarrel in this case as to the district committee being properly constituted; nor is any question raised as to its original power as the proper "governing authority" to fill this vacancy. The appellant maintains that it is the sole authority and that the action of the chairman in voting once as a member and again as chairman of the meeting is in accordance with parliamentary custom, and that it is logical since he represented the county in the district which had cast the largest number of Republican votes in the preceding general election. This argument carries the hypothesis

that the State Central Committee was without power to make the nomination; that its sole authority under the party law was to review the ruling of the district chairman; and having held it to be unauthorized, to let the matter stand and the District Committee work its way out. It is maintained the District Committee voluntarily or by order of court should have chosen the candidate by lot.

It is again the argument of the appellant that the silence of the rules of the party concerning the breaking of a tie in the vote of a committee permitted it to be done under common law, and that it gives the chairman of a meeting power to break the tie. 46 C. J., p. 1382. We do not read that law as giving any presiding officer the power to break a tie where he is a member of a body and has already voted as such. But such power may be expressly given by statute or a rule. Pinson v. Morrow, 189 Ky. 291, 224 S. W. 879; Cf. Hill v. Taylor, 264 Ky. 708, 95 S. W. 2d 566. Be that as it may, in this case we are sure that in this matter of procedure it was strictly an inter-party affair and within the power of the supreme authority of the political party under its own laws to declare that the second vote of the chairman of the District Committee was ineffectual. Conceding that, says the appellant, no authority existed in the State Central Committee to nominate the candidate.

This presents a closer question, that is, whether the State Central Committee should be regarded as the "governing authority" within the meaning of this particular statute delegating the power to nominate the candidate.

In Taylor v. Chandler, 261 Ky. 7, 86 S. W. 2d 1038, 1039, we construed the term "governing authority of each political party" to mean the County Executive Committee and not the State Committee. But that was because of the context and the relation of the particular statute to other sections and, as well, to the system established for guarding and counting the ballots in each county. In determining the rights of the parties, it was not supposed that there might be a failure on the part of the County Committee to act in the matter or an appeal made to the state body from its action. Neither are Russell v. Rhea, 269 Ky. 138, 106 S. W. 2d 148, or Howard v. Stevenson, 269 Ky. 491, 107 S. W. 2d

304, in point. They declare that the State Board of Election Commissioners must obey the statutes requiring them to appoint county election commissioners from lists submitted by the county committees of the respective parties. In those and similar cases, the statutes lodged power in the county committees specifically; and in Smith v. Howard, 275 Ky. 165, 120 S. W. 2d 1040, 1043, we held that precinct committeemen in a certain status could not compel the State Election Commissioners to appoint the County Election Commissioner from a list submitted by them where under an unusual condition the county committee was deadlocked. We wrote:

"The mere fact that this committee does not function by reason of the existence of a deadlock does not justify the courts in attempting to pass or amend a party law. We feel that this is a matter purely and simply for party decision and that this situation must be remedied by party action.

"We have in this case simply a situation where the county committee of a party, and it alone, is authorized to act, and where the committee has failed or refused, or for some reason or other cannot act, and we are unable to see how the courts can, when this stalemate exists, say that action may be taken in any other manner or by any other person. We feel that were we to uphold the proceeding adopted by appellants and say that this certification of names was valid we would be making party law and usurping the functions of those whose duty and privilege it is to enact party legislation."

In the case at bar the condition was "remedied by party action." See also Commonwealth v. Combs, 120 Ky. 368, 86 S. W. 697; Beasley v. Adams, 118 Ky. 695, 82 S. W. 249, 26 Ky. Law Rep. 573; Democratic Executive Committee v. Dougherty, 134 Ky. 402, 403, 120 S. W. 343; Harris v. Bruce, 120 Ky. 682, 87 S. W. 1078, and other like cases holding that under the terms of a section of the statutes relating to primary elections held under the auspices of political parties (since repealed), the action of the superior governing authorities of the party in a contest for nomination or where there was a tie vote, would not be interfered with by the courts, as such was a political question, determinable under party law. Moreover, the statute with which we are dealing

confers the privilege of nominating a candidate to fill a vacancy broadly on the "governing authority." The certitude that this means the District Committee in the first instance rests upon implication. While the party law is specific as to the power of the State Central Committee on appeal to review a "ruling of any subordinate committee," and finally decide the right of the matter, we think it is implicit in the whole body of the party law that the State Central Committee, as the supreme authority, may act when any subordinate committee fails to do so in such an important matter affecting the party's interests as the present one. The continuing deadlock after several meetings and the taking of 22 ballots constituted a failure to act. In re Kehoe, 45 Misc. 132, 91 N. Y. S. 889. It is also held that a vacancy in a nomination arises where the vote at a primary results in a tie, for the breaking of which no provision is made. Usilton v. Bramble, 117 Md. 10, 82 A. 661, Ann. Cas. 1913E, 743. Time was drawing close. Was the party to go without a nominee in place of the one chosen by the members of the party at the primary election because of the failure of a subordinate committee to agree? To say that it should would be contrary to the spirit and the policy of our government and of the party law. The controversy between the two candidates was political and an inter-party matter in so far as it related to the proper governing authority making the nomination. As said in Moody v. Trimble, 109 Ky. 139, 58 S. W. 504, 505, 50 L. R. A. 810: "The settlement of such questions, in the nature of things, should be left to party authority; and therefore we will not scan too closely party rules which undertake, however imperfectly, to confer authority on its various committees to manage party affairs to the best interests of the organization, nor deny such authority, even if it be conferred in terms somewhat general."

We express no opinion as to the authority of the State Central Committee to supersede the action of a subordinate committee, acting as the "governing authority," under this or like statute, where it made a nomination by a plurality or majority vote of its members.

The judgment of the Circuit Court that the appellee, Martin, has been nominated by the "governing authority" of the Republican Party is affirmed.