Porter WALLACE, Appellant,

v.

Calvin H. CASH, Secretary, Grayson County Republican Executive Committee, et al., Appellees.

Court of Appeals of Kentucky.

Oct. 30, 1959.

---

Clarence Bartlett, Woodward, Bartlett & McCarroll, Owensboro, for appellant.

Wyatt, Grafton & Grafton, Arthur W. Grafton, Edgar A. Zingman and H. Wendell Cherry, Louisville, Earl Martin, Hartford, for appellees.

STEWART, Judge.

This appeal involves the question of whether appellant, Porter Wallace, or appellee, Zelma Henderson, is the valid nominee of the Republican party for the office of county court clerk of Grayson County, to be voted for at the November 3, 1959, election.

At a regular county election in 1957, Guthrie (W. G.) Henderson was elected county court clerk of Grayson County for a four-year term. Henderson held that office until his decease on April 25, 1959. His death having occurred less than 70 days before the 1959 primary election held on May 26, 1959, KRS 119.030 authorized the "governing authority" of the Republican party to select a nominee to be voted on at the 1959 general election to fill the vacancy caused by Henderson's death. The Republican County Executive Committee of Grayson County (herein called "the Committee") is the "governing authority" of the Republican party in that county. See Borders v. Collingsworth, Ky., 251 S.W.2d 463.

On May 2, 1959, a meeting was held at the court house in Leitchfield, pursuant to a call issued by Porter Wallace, appellant herein, as county chairman. The purpose of the meeting, according to the notice sent out, was to select a list of eight "qualified and loyal Republicans" for each precinct from which the county election commissioners would select Republican election officers for the May primary and the November elections of 1959, "or (transact) any other business that might officially come before the Committee". Thirteen of the 59 members of the Committee attended in person and 17 other members were purportedly present by proxy, but no information is furnished in the record before us as to the nature of these proxies and the power granted under them.

The minutes of this meeting disclose that Porter Wallace was nominated and unanimously voted to be the nominee to run for the office in question. He then resigned as county chairman of the Committee and W. M. Rice was elected to fill out Wallace's unexpired term. The secretary of the Committee, Calvin Cash, one of the appellees herein, was absent, so Nadeane S. Nugent, holding the proxy of Marie Ashley (whose name does not appear on the roll of the Committee members) was elected acting secretary. The alleged certificate of nomination delivered to Wallace was signed by William Rice and Nadeane S. Nugent in their respective official capacities. There was a line reserved for the signature of Calvin Cash, the regular secretary of the Committee, but he refused to sign.

Shortly thereafter, a petition duly signed by 42 of the 59 members of the Committee was addressed to the regular vice-chairman, who is a woman, requesting her to call a meeting on May 23, 1959. The vice-chairman refused to comply with the demands of the petition, and Cash issued the call. This petition stated that the new meeting was being held, first, to rescind the action taken on May 2nd in naming Wallace as the Republican candidate for county

court clerk and then to nominate a Republican candidate for the office left vacant by the death of Guthrie (W. G.) Henderson. As Wallace, the regular Committee chairman, had resigned, and because the vice-chairman did not attend, Chester O. Carrier was elected chairman pro tem. for this meeting only.

The minutes of the May 23rd session reveal that the proceedings of May 2nd in nominating a county court clerk were declared null and void, stating these reasons therefor: (a) That Wallace had charges filed and still pending against him before the Republican State Central Committee, so that under the party rules he had no right to call and hold the meeting of May 2nd; and (b) that the Committee members had been led to believe the May 2nd meeting had been scheduled for the purpose of recommending a list of precinct officers for the primary and general elections for 1959, and deception was practiced upon the members of the Committee when those present deviated from the announced purpose of the gathering and proceeded to name a candidate for county court clerk.

The motion to revoke the nomination of Wallace for county court clerk received unanimous support, including the vote of 17 persons who were present in person or by proxy at the May 2nd meeting. The names of Zelma Henderson and Wallace were then put in nomination to fill the county court clerk vacancy, and Zelma Henderson received all the votes on a roll call taken. A document purporting to be Zelma Henderson's certificate of nomination was signed by Carrier as chairman pro tem. and by Cash as secretary of the Committee, and was filed in the county court clerk's office on May 25, 1959.

On June 13, 1959, Wallace filed suit against Calvin Cash, as secretary of the Committee, asking for a mandatory injunction to require Cash, in his official capacity, to affix his signature to Wallace's so-called certificate of nomination. Appellant later amended his complaint to include Zelma Henderson as a party defendant and sought, as additional relief, a revocation of her nomination. She set up in her answer her claim to the nomination by virtue of the proceedings we have outlined.

On July 29, 1959, Wallace tendered the certificate received by him for filing at the county court clerk's office, which filing was refused.

After other pleadings were entered, together with certain affidavits and exhibits, a hearing was held on September 8, 1959, before the Honorable Athol Lee Taylor, acting as special judge. The trial judge sustained a motion for summary judgment entered by appellees, ruling that he had no jurisdiction to hear and adjudicate the issues made by the pleadings as to the propriety of the call or the conduct of the two meetings held by the Committee on May 2nd and May 23rd; and that, since no appeal had been taken to any higher authority in the Republican party from the action consummated in either meeting, he must accept the result in each instance as valid on its face. The court then determined that the nomination of Zelma Henderson would be left undisturbed.

Appellant contends the Committee did not have the power at its second (May 23rd) meeting to revoke the nomination of Wallace, which he asserts was validly made at its first (May 2nd) meeting. Appellees maintain, on the other hand, that the Committee had the authority to rescind any previous action; that the courts will not inquire into political questions and party procedures; and that a certificate of nomination, authentic on its face, will be upheld.

 In determining the question of how far the courts will go behind the fact of a nomination for a public office, carried out by a duly organized political body, the inquiry becomes one of whether the question is of a political nature or of a judicial character. In the absence of fraud or a controlling statute, the law generally, as

well as the law of Kentucky, is clear in its pronouncement that the courts will not interfere with the action taken by the constituted authorities of an established political party in matters involving party government. Furthermore, the court decisions appear to be uniform in holding that party methods and proceedings resorted to in the nomination of candidates, and in resolving all disputes arising out of party nominations, rest with the tribunals set up by the party. See 29 C.J.S. Elections § 88, pp. 121–122; and 18 Am. Jur., Elections, sec. 143, pp. 273–274.

Kentucky decisions that have passed on this precise point are in accord with the foregoing statement. The most recent of these is O'Neil v. O'Connell, 300 Ky. 707, 189 S.W.2d 965, 169 A.L.R. 1271. In that case it was necessary, because of a vacancy occurring, to name a Republican candidate for the office of Commonwealth's attorney for the Thirty-Eighth Judicial District to run in the November election. Russell O'Neil and Otto C. Martin sought the nomination. Under the circumstances the "governing authority" of the Republican party prescribed by law to select a nominee for Commonwealth's attorney was a committee consisting of the men and women chairmen of the several county executive committees of the counties composing the above judicial district. Twenty-one ballots were taken which resulted in a tie; on the twenty-second ballot, the chairman voted to break the tie in favor of O'Neil. A certificate of nomination was issued to O'Neil which he filed with the Secretary of State. Actually the chairman voted twice for the reason that he voted with one of the groups in bringing about a tie.

Martin appealed his case to the Republican State Central Committee. This body ruled the chairman's second vote was void and, as a consequence, the certificate of nomination given to O'Neil was ordered revoked. The Central Committee thereafter held that, since the selection of O'Neil was a nullity, the effect was no nomination had been made by the committee of the judicial district. It determined it would take upon itself the power to name the nominee. Thereupon a vote was taken which resulted in Martin's being made the candidate to run. O'Neil filed suit asking for injunctive relief to the end that he be declared the nominee.

■ This Court, in refusing to interfere with Martin's certificate of nomination, took the position that the courts will not adjudicate a dispute of conflicting claimants involving nomination rights, which may arise out of a decision of the dominant authority of a political party, for the reason that such difference should be resolved within the framework of the party organization.

In the earlier opinion of Moody v. Trimble, 109 Ky. 139, 58 S.W. 504, 505, 50 L.R.A. 810, one of the cases specifically relied upon by this Court for the decision reached in the O'Neil opinion, cited above, an interparty dispute arose as to who was the regular nominee of the Democratic party for the Seventh congressional district as then constituted, which contest was resolved by the governing authority of the party, and this Court refused to review the party action taken, saying: "But our statutes do not undertake to confer any definite legal rights on one whose title to the position of nominee is in dispute. * * * The settlement of such questions, in the nature of things, should be left to party authority; and therefore we will not scan too closely party rules which undertake, however imperfectly, to confer authority on its various committees to manage party affairs to the best interests of the organization, nor deny such authority, even if it be conferred in terms somewhat general."

■ In the light of the principles laid down, it appears to us we are called upon in the case at bar to impinge upon and control the judgment of a duly constituted party body which had plenary power to do the act we are called upon to undo. The Committee was organized for the purpose of

effectuating the will of those who make up its membership, and were we to review and reverse the decisions it makes as to those candidates it desires to run for public office we would be taking over its function of selecting its party nominees. This duty we cannot assume. As pointed out in the judgment, Wallace's remedy was an appeal to the higher governing authority of the Republican party.

■ The lower court correctly held it was without jurisdiction to consider the action of the Committee in this case.

Wherefore, the judgment is affirmed.

SANDIDGE, J., dissenting.