**MAGOFFIN COUNTY BOARD OF ELECTION COMMISSIONERS et al., Appellants,**

**v.**

**Garnett CONLEY et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 14, 1969.

Marcus Mann, Salyersville, Bruce Stephens, Jr., Hazard, Ben B. Fowler, Dailey & Fowler, Frankfort, for appellants.

Codell Martin, Earl Cornett, Hindman, Ralph L. Gardner, Salyersville, for appellees.

STEINFELD, Judge.

Appellees, the chairman and four members of the Executive Committee of the Magoffin County Democratic Party (hereafter County Committee), sued the Magoffin County Board of Election Commissioners (hereafter Board), its members, the sheriff and clerk of that county. The action was for the purpose of resolving a controversy over election officers appointed to represent the Democratic Party at the polls at the general election on November 4, 1969.[1] Petitioners sought mandatory relief and a declaration of rights. The trial court granted their demand for an injunction and declared that the action of the Board was

---

1. A. B. Conley, Garnett Conley and Coachie Joseph filed a statement that they " * * * did not authorize the filing of this action, do not desire to and do not intended to prosecute it." They took no part in the proceedings but made no motion to strike their names as plaintiffs. The statement of appeal shows they are appellants.

null and void. From that judgment the defendants below appeal. We reverse.

The complaint charges that the Board acted on September 6, 1969, "* * * with the full knowledge that the question was before the State Democratic Central Executive Committee as to who would be the Democratic *Chairman* of Magoffin County, and without the knowledge and consent of the full Magoffin County Executive Committee of the Democratic Party, and that their action (sic) are void; * * * that the defendant, Boone Brown,[2] had full knowledge that he was not acting in accordance with the directives of the plaintiffs, *M*embers of the Executive Committee of the Democratic Party of Magoffin County and in fact had no right to make the selection of officers[3] * * *." (Emphasis ours.)

These allegations were denied but it was affirmatively pled that the selections made on September 6, 1969, were from lists submitted by the "* * * duly elected and recognized Committee of the two major political parties * * *".

The facts gleaned from the pleadings and the proof indicate that on the 6th day of September, 1969, the Board met, and from two lists previously submitted, one by each of the executive committees of the two dominant political parties,[4] appointed election officers. KRS 116.070; O'Neil v. O'Connell, 300 Ky. 707, 189 S.W.2d 965, 169 A.L.R. 1271 (1945). KRS 116.070 provides:

"The county board of election commissioners shall, not later than September 20 each year, appoint for each election precinct in the county two judges, one clerk, and one sheriff of election, who shall hold their offices for one year and until their successors are appointed and qualified. The county executive committees of the two political parties having representation on the State Board of Election Commissioners may, on or before September 15 each year, designate in writing to the county board of election commissioners a list of not less than eight names for each precinct except that in any precinct where there are not as many as eight persons possessing the qualifications of an election officer belonging to the political party filing the list, a less number may be designated. If there are two or more contending executive committees of the same party in any county, the one recognized by the written certificate of the chairman of the state central committee of the party shall be the one authorized to submit the lists. If lists are submitted, one judge at each voting place shall be selected from each list, and the sheriff shall be chosen from one list and the clerk from the other. If no lists are submitted, the officers of the election shall be so selected and appointed that one of the judges at each voting place is of one political party, and the other judge of a different political party, and there shall be a like difference at each voting place between the sheriff and the clerk of election. The county board of election commissioners shall give due notice of the appointment of election officers to the sheriff of the county, who shall, before the day of the next ensuing election and within ten days after the appointments, give each election officer written notice of his appointment."

Promptly after the appointments were made written notice was served on the appointees advising them of their appointments.

Some confusion and controversy raged among the members of the County Committee and candidates, which controversy reached the attention of the Kentucky State

2. Boone Brown was the Democratic Member of the Magoffin County Board of Election Commissioners.

3. Other complaints were alleged but were not passed on by the trial court and were not argued before us. Apparently they were abandoned.

4. The list submitted by the County Committee was delivered to the Board September 2, 1969.

Democratic Executive Committee (hereafter State Committee). On September 8, 1969, the State Committee adopted a resolution which was read into evidence and filed. It recorded the acts of that body as removing Marcus Mann "as Magoffin County Democratic Chairman" and "as a member of the Magoffin County Democratic Executive Committee", designating Bill Shepherd as the new chairman, directing that the County Committee " * * * be called into meeting * * *" and receive a new " * * * list of precinct officers * * *", that it certify that list to the election commissioners, and removing Mrs. Ina Brown " * * * as a member of the Magoffin County Democratic Executive Committee * * *."

The composition of the committee before and after the removals was as follows:

| Before | After |
|---|---|
| Marcus Mann, Chairman | |
| Bill Shepherd | Bill Shepherd, Chairman |
| Morine Arnett | Morine Arnett |
| Keen Isaac | Keen Isaac |
| Coachie Joseph | Coachie Joseph |
| Garnett Conley | Garnett Conley |
| A. B. Conley | A. B. Conley |
| Ina Brown | |
| Mrs. Patricia J. Bailey, Secretary | Mrs. Patricia J. Bailey, Secretary |

On the 13th day of September, 1969, a second list of proposed election officers was submitted to the Board by the County Committee. There was a preamble on that list which stated: "Pursuant to Minutes of State Central Executive Committee of the Democratic Party and the agreements entered therein between the parties, it is now agreed by and between the candidates and approved by the Executive Committee that the following list of election officers be submitted to the Magoffin County Board of Election Commissioners for appointment." [5]

Filed in evidence was a copy of the rules of the Democratic Party. It provided that "On the first Saturday in December following the Presidential Election, all registered Democrats as of the preceding Presidential Election living within each precinct shall come together * * * at the polling place used in the preceding Presidential Election and shall cause to be elected a committee of three members composed of a committeeman and a committeewoman of any age, and a member who shall be 35 years of age or under, all of whom shall be registered Democrats in the precinct * * *". Also that on the succeeding Saturday the elected committeemen shall meet " * * * and shall thereupon elect an Executive Committee consisting of not less than three members nor more than 11 members, * * *". That committee is required to " * * * immediately meet and elect a Chairman and Secretary, * * *". The rules provide for the removal of committeemen and the removal of the chairman and secretary and for the filling of vacancies.

■ There is no proof and no contention that the committee which existed on September 6, 1969, when the first list was submitted was not properly elected or that any other committee contended that it was the official County Committee. No *cer-*

5. KRS 116.070 which authorizes candidates for nomination in a primary election to join in submitting a list of precinct election officers has no application or counterpart with respect to general elections.

*tificate* was ever filed with the Board showing that there were " * * * two or more contending executive committees * * *" or that the County Committee, after Mann was removed as chairman was " * * * the one authorized to submit the lists." KRS 116.070.

A member of the Board testified that he had no knowledge of any controversy with respect to the County Committee when the first list was delivered to him. He also testified that he, the other regular member of the Board, and the sheriff " * * * came up with the same decision," in the selection of precinct officers. The record does not show that any of the members of the Board knew of the controversy when the original appointments were made.

It was and is contended by appellants that the appointments made on September 6, 1969, were valid and that once having been made were final unless the appointee or appointees are removed pursuant to KRS 116.-080 which provides in part as follows:

"The board may remove all election officers who are disqualified under the provisions of this section, but no removal shall be made within five days of the election. No removal shall be made at any time without cause, and the grounds therefor shall be reduced to writing by the board and made a part of its records. Vacancies shall be filled by the county board of election commissioners from the list, if any, from which the original officer was selected and in conformity with the provisions of this section and of KRS 116.070."

The trial court held that the first submitted list was " * * * null and void and of no consequence." It found that on September 8, 1969, the State Committee dismissed the chairman and removed him and a member from the County Committee, therefore, "There were in fact two different County Committees. There was the original committee composed of eight members with Marcus Mann as chairman. There was the other, with Bill Shepherd as chairman and made up of the same members with the exception of the removal of Marcus Mann and Ina Brown. This is the committee that was recognized by the State Central Committee as disclosed by their resolution on September 8, 1969."

It is our opinion that there was only one County Committee, that it had full recognition of the State Committee and there was no rival committee. Russell v. Rhea, 269 Ky. 138, 106 S.W.2d 148 (1937). The finding by the trial court that there were two committees was clearly erroneous—it was contrary to the undisputed evidence.

■ There is no attack on the list submitted on September 2, 1969, (except the assertion that it was superseded by the second list). There is no proof that the County Committee, as composed on the date the first list was submitted, was not the official committee or that it did not act according to party or statutory law. The Board was required by law to appoint from that list—it had no choice. Routh v. Hughes, 300 Ky. 737, 190 S.W.2d 351 (1945). Also see O'Connell v. Duff, 276 Ky. 782, 125 S.W.2d 718 (1939) and Howard v. Stevenson, 269 Ky. 491, 107 S.W.2d 304 (1937). Once having exercised the power of appointment it was powerless to remove the precinct officers except for cause. Denny v. Bosworth, 113 Ky. 785, 68 S.W. 1078, 24 K.L.R. 554 (1902).

■ We are referred to O'Neil v. O'Connell, 300 Ky. 707, 189 S.W.2d 965, 169 A.L.R. 1271 (1945) and Wallace v. Cash, Ky., 328 S.W.2d 516 (1959), with the claim that these authorities sustained the contention of the appellees that the final decision of the State Committee was controlling. Were this " * * * strictly an inter-party (sic) affair and within the power of the supreme authority of the political party under its own laws to declare that the second * * *" list was the official designation there might be some merit in the position taken but this was not strictly a party affair. Both the O'Neil and Wallace cases involved intra-party controversies. The

legislature, not intra-party rules, provided by statute how precinct election officers are selected. KRS 116.080.

■ The Board legally acted before the second list was submitted, therefore, we need not consider the import of its submission. In Board of Education of Boyle County v. McChesney, 235 Ky. 692, 32 S.W. 2d 26 (1930), we said: "Its function is fully performed when it makes the choice. * * *. When a power is given and has been exercised, and the repository of the power has no further control over the subject, except to remove the appointee for cause, the appointing power is exhausted and may not be reconsidered. If the power belongs to a board, its act is complete when the meeting has adjourned." We hold that the attack on the original appointments must fail.

The judgment is reversed for the entry of a judgment consistent herewith, and the order directing the Board to reassemble and appoint election officers is set aside.

All concur.